[PHILADELPHIA, JANUARY 14TH, 1839.]

## PHILADELPHIA, WILMINGTON, &c. RAIL ROAD CO.
### *against* TRIMBLE.

#### CERTIORARI.

An act of assembly incorporating a rail-road company, authorised them to enter upon the land of private persons, for the purpose of laying out the road, and to take possession of so much as should be necessary for constructing the road. It also declared that if the parties could not agree as to the value of the land, &c., the Court of Common Pleas should appoint twelve persons to value the same, who should take an oath, &c., justly and impartially to value the same, taking into consideration the advantages as well as the disadvantages arising from the road, and who should make a report within a certain time. By another section it was made the duty of the company to provide and keep in repair a suitable passage across the road whenever the rail-road should intersect a farm. On a petition praying the Court to appoint persons to assess the damage sustained by the petitioner, in consequence of the occupation of a part of his land by the rail-road, it was *held*,—(1) That it was not necessary for the jury to return a valuation of the land occupied, nor of the materials taken in the construction of the road, or of the sum allowed for other injuries. (2) That it was not necessary for them to state the quantity of land taken for the road, nor to give a description of the same. (3) That the jury had no right to include any claims for bridges; and therefore that the report was bad in assessing damages to the petitioner for a bridge for the use of the premises.

THIS was a *certiorari* to the Court of Common Pleas of Delaware County, to remove the proceedings in the matter of the petition of Lewis Trimble for a jury to assess the damages done to his land by The Philadelphia, Wilmington and Baltimore Rail Road Company.

By the eleventh section of the act of the legislature of Pennsylvania passed on the 2d of April, 1831, to incorporate " The Philadelphia and Delaware County Rail Road Company," the name of which was afterwards changed to " The Philadelphia, Wilmington and Baltimore Rail Road Company," it was declared, " That it shall and may be lawful for the said company, their officers, engineers and agents, to enter upon any lands for the purpose of exploring, surveying and locating the route of the said rail-road, doing thereto no unnecessary damage ; and when the said route shall be determined by the said company, it shall be lawful for the said company, their agents, officers, engineers, contractors and servants, at any time to enter upon, take possession of and use such land ; and also to take from any land in the neighbourhood, gravel, stone, wood and other materials for the purpose of constructing and maintaining

such rail-road, subject however to such compensation as said company may have agreed to pay therefor, or as shall be ascertained in the manner hereinafter respectively directed."

The twelfth section enacted, "That when the said company cannot agree with the owner or owners of such required land for the purchase thereof, or for the damages sustained by such owner or owners, or as to the compensation to be paid to the owner or owners of any sand, gravel, stone, wood or other material taken for the purpose aforesaid, or where by reason of legal incapacity or absence of any such owner or owners, no such agreement or purchase can be made, the Court of Common Pleas for the proper county, on application thereto by or on behalf of either party, and at the costs and charges of said company, shall nominate and appoint twelve discreet and disinterested persons of the said county, and shall issue a precept to the sheriff of the said county, to summon the said twelve persons, to meet on the land so required, or from whence the said materials shall or may be taken, at a day to be expressed in the warrant, not less than ten nor more than twenty days thereafter; and the sheriff upon receiving the said warrant, shall forthwith summon the said twelve persons, and shall give at least eight days notice to the respective parties; and the said sheriff shall attend at the time and place named in the warrant, and when nine or more of the said persons shall have appeared, shall in the case of land so required, administer to each of them an oath or affirmation, ' that he will faithfully, justly and impartially value the land occupied or required for such rail-road, or other works, and all damages which the owner or owners shall sustain, or may have sustained by reason of the construction of the said rail-road and other works, taking into consideration, the advantages as well as the disadvantages of the same to the said owner or owners, according to the best of his skill and judgment; and (in case of materials taken for the purpose aforesaid,) that he will faithfully, justly and impartially value the said materials so taken, and fix the rate of compensation to be paid therefor by the said company to the said owner or owners, taking into consideration the advantages as well as the disadvantages arising from the construction of such rail-road and other works, to the said owner or owners according to the best of his skill and judgment;' whereupon the said persons shall proceed to view the land so required, or the place from whence such materials shall or may be taken, as the case may be, and to hear the evidence of the respective parties, and their verdict signed by the sheriff, and at least seven of the jury, shall be returned by the sheriff within five days thereafter, to the prothonotary of the said county, who shall file the same; and the said sheriff and persons shall be entitled to the like fees for their respective services, as are allowed in the execution of an order issued by the Orphans' Court,

(Philadelphia, Wilmington, &c., Rail Road Co. v. Trimble.)

for the valuation of lands of an intestate, under the intestate laws of this commonwealth."

The thirteenth section provided, " That either party shall be at liberty to make exceptions to any verdict rendered according to the provisions of the preceding section, within twenty days after the same shall be returned and filed by the prothonotary as aforesaid; which exceptions shall be heard by the Court of Common Pleas of the proper county, who may either affirm or set aside the same as shall be lawful and right, and if no such exceptions be filed within twenty days, or if any verdict be affirmed, then the verdict shall stand as a judgment against the party against whom it is given, but if any such verdict be set aside by the Court, a new precept shall issue to the sheriff, in the manner before specified: Provided, That upon the subsequent proceedings, if the party excepting does not recover a verdict more favourable than the verdict so excepted to and set aside, such party shall pay all costs of such subsequent proceedings."

The fourteenth section declared, " That it shall be the duty of the said company, to construct and keep in repair good and sufficient passages across the said rail-road, where any public roads shall intersect and cross the same, so that the passage of carriages, horses, persons and cattle along the said roads shall not be obstructed; and also when the said rail-road shall intersect any farm, to provide and keep in repair a suitable passage for the use of the said farm."

On the first of March, 1838, Lewis Trimble presented a petition of the Court of Common Pleas of Delaware County, setting forth, " That the Philadelphia, Wilmington and Baltimore Rail Road Company, by themselves, their agents, officers, engineers, contractors and servants have entered upon, taken possession of, and used certain lands in the township of Ridley in the county of Delaware, for the purpose of constructing and maintaining the rail-road of the said company thereon. That the petitioner then was and still is the owner of the said lands. That the said company cannot agree with the owner or owners of the said land, for the purchase thereof, or for the damages sustained by such owner or owners. Your petitioner therefore makes this his application to the Court of Common Pleas of Delaware County, requesting that in his behalf and at the costs and charges of the said company, the said Court will appoint twelve discreet and disinterested persons of the said county, and will issue a precept to the sheriff of the said county, to summon the said twelve persons to meet on the said land, on a day to be expressed in the warrant, not less than ten, nor more than twenty days thereafter, and to further proceed thereon according to law, for the purpose aforesaid."

On the same day the Court appointed twelve persons of the

county for the purposes set forth in the petition, who on the 5th of April following, made the following return.

"We, Oborn Levis, Esq., Joel Evans, John L. Pearson, Esq., Enos Sharpless, William Painter, John Lewis, Nicholas Fairlamb, Minshall Painter, John Afflick, Esq., Edward Garrett and Eli D. Pierce, eleven of the jurors appointed by the Court and named in the annexed warrant, having met agreeably thereto, and having been duly affirmed according to the form prescribed by the act of assembly, did proceed to view the land of Lewis Trimble (petitioner in said precept named) so occupied or required for the Philadelphia, Wilmington and Baltimore Rail-road, and having heard the evidence of the respective parties, and taking into consideration the advantages as well as disadvantages of the said Rail-road to the said Lewis Trimble, do adjudge that the said Lewis Trimble has sustained damage by reason of the construction of the said Rail-road to the amount of two thousand eight hundred dollars, including all claims by him for a bridge for the use of the said premises. In witness whereof the sheriff, and the jurors aforesaid have signed this verdict the fifth day of April, Anno Domini, 1838."

On the 25th of April, 1838, the following exceptions were filed.

"1. The jury have not returned a valuation of the land of the said petitioner occupied by the said rail-road, but have assessed the damages generally at the sum of twenty-eight hundred dollars, without stating the value of the land, or the injuries for which damages were allowed.

2. The jury should have reported the value of the land occupied by the said road, and the damages allowed for other injuries separately; and so of the materials used in its construction.

3. The damages are exorbitant, and were assessed without any evidence produced before the jury, of the value of the land, or of the injuries for which damages were claimed and allowed; but upon the allegations of the party or his counsel.

4. The nature of the injuries for which damages are allowed, is not set forth in the petition, writ or verdict.

5. The jury allowed damages for alleged injuries, not provided for by the act of assembly, and which, if proved, did not constitute proper subjects for their inquiry.

6. The jury allowed interest upon unliquidated damages, and assumed the power of making allowance for bridges, and have included in the amount of damages reported, all claims by the petitioner for bridges for the use of the said premises—which they had no right to do.

7. The jury did not take into consideration the advantages of

the said road to the petitioner, and disregarded the correct rule for the assessment of damages in such cases, which is the difference between what the land would sell for unaffected by the road, and what it would sell for at the time the road was finished. The difference should be the measure of compensation.

8. The jury should have stated the quantity of land occupied by the said road, as well as the value thereof, neither of which is stated in the verdict.

9. Joel Evans, one of the jurors, had been employed by the said petitioner to survey the ground occupied by the said road before he was affirmed upon the said jury, a circumstance which was unknown to the company at the time he was qualified."

On the 28th of August, 1838, after argument, the Court of Common Pleas, (by DARLINGTON, President,) delivered the following opinion.

"In all these cases the jurors have examined and reported, that they have allowed to each of the petitioners a gross sum in damages, 'including all claims by them for bridges for the use of the said premises.' The company take exception to this, on the ground that the legitimate object of inquiry before the jury, as pointed out by their oaths, was 'faithfully, justly, and impartially to value the land occupied or required for such rail-road or other works, and all damages which the owner or owners shall sustain, or may have sustained by reason of the construction of the said rail-road or other works, taking into consideration the advantages as well as the disadvantages of the same to the said owner or owners;' and contend that any additional allowance beyond this, for a bridge or bridges, proposed to be either built or dispensed with, or any estimate of damages including a prospective claim for bridges, is without the pale of their duty, and vitiates their finding.

By the fourteenth section of the act incorporating the original company, (*Pamph. Laws of* 1830-1, p. 359,) it is expressly enjoined upon them, that when the said rail-road shall intersect any farm, they shall 'provide and keep in repair a suitable passage for the use of the said farm,' thus imposing upon them, in my apprehension, a lasting obligation, coeval with the existence of the road itself, to afford a sufficient necessary communication, from one part of the farm to the other, without prescribing any particular mode; whether by passing over it on a level at one place where there may be no cutting or embankment, by a bridge over a deep excavation, by a gradual slope into and out of a smaller one, or a passage by a tunnel or othewise under a high embankment: all the company are bound to do is to 'provide and keep in repair a suitable passage for the use of said farm;' and this is a perpetual obligation upon them. I am of opinion that it was not within the province of the jury to

(Philadelphia, Wilmington, &c., Rail Road Co. v. Trimble.)

allow any thing in lieu of a proposed bridge, when it might well be, none ever was claimed, or asked for; nor to judge whether it might or might not be hereafter a suitable passage, or become from natural or common causes a necessary one; and however praiseworthy the desire of the jury might have been to quiet all future possible litigation, and, in the language of one of them, 'to preclude all claims upon the company for a bridge for the use of the land for all time to come;' yet it seems to me that it was a subject neither within the scope of their duty, nor their oath of office, nor was it submitted to them by the express agreement of both parties; nay it is in evidence, that at least one of the parties, utterly disclaimed all claims for a bridge, culvert, or any thing else; and yet the jury seem to have thought he might change his mind, and proceeded to award to him a large sum, including all claims for bridges for the use of the premises; as if to preclude any claim on that account for all time to come. It is not in my opinion a sufficient answer to this objection, to say, that it does not appear, that any sum, or how much was allowed in lieu of a bridge; for the verdict of the jury is, that they included the claim for bridges in the damages reported; neither is it a satisfactory one to argue, that if the petitioners accept the amount of damages thus found, including all claims for bridges, they would be estopped from any further claim; for if a bridge be not now nor ever will be the most eligible and suitable passage, then damages are allowed for nothing; but if a bridge be now, or hereafter may become a necessary and most suitable passage for the use of the farm the company will be bound to provide it and keep it in repair; for I apprehend that nothing short of a release of all claims secured by the 14th section of the act of assembly, fully executed and binding on the lands for all time to come, in the hands of future owners, and for that purpose placed upon record, will exonerate the company from their obligation to provide and keep in repair a suitable passage for the use of the farm. For these reasons, and upon this exception alone, I am of opinion, that the verdict of the jury should be set aside. The majority of the Court are, however, of opinion, that the exceptions ought all to be overruled, and the finding of the jury in each case be confirmed; it not appearing to them that any thing was in fact allowed for 'a bridge for the use of the premises respectively;' for although those words were actually inserted in their finding, yet it appears to them it was done more out of abundant caution, and to prevent future claim or litigation, than to add a cent to the amount of damages they were about to find: it does not appear to them that any claim was distinctly made in either case, for a bridge for the use of the farm ; and in the case of Lewis Trimble, all allowance for a bridge, culvert, or the like, was expressly disclaimed. The exceptions are therefore overruled, and the reports confirmed."

The proceedings were then removed to this Court by *certiorari,* and the following exceptions filed.

" 1. The jury appointed by the Court below to estimate the damages suffered by the petitioner did not return a valuation of the land occupied by the rail-road; nor of the materials taken in the construction thereof; nor did they state the sum allowed for other injuries; but assessed the damages generally at the sum of twenty eight hundred dollars, ($2800.)

2. The jury did not state the quantity of land taken by the railroad; nor have they inserted in their report a description of the same, whereby to conclude the petitioner from recovering further damages for the same land.

3. The jury assumed the power of making an allowance for bridges, and have included in the amount of damages reported ' all claims by the petitioner for bridges for the use of the said premises,' which they had no right to do."

Mr. *A. H. Smith* and Mr. *Edwards*, argued for the appellants;

Mr. *W. M. Tilghman* and Mr. *B. Tilghman*, for the appellee; who cited *Commonwealth* v. *Macalister*, (2 *Watts*, 190.)

The opinion of the Court was delivered by

KENNEDY, J.—The first exception is not maintainable; for although the form of the oath or affirmation, required by the twelfth section of the act incorporating the plaintiffs in error, and providing for their making the road, requires the jury to value the land occupied by the road, yet it also requires that they shall in making their verdict, take into consideration the advantages as well as disadvantages accruing to the owner of the land by reason of the road. Hence, it would seem, not to be the value of the land occupied by the road, that the act requires the jury to report by their verdict, but the value of the damages sustained thereby, and the amount of compensation to be made for the same. Consequently, it is plain, that the form of the oath or affirmation, in requiring the jury to value the land occupied by the road, and all the damages which the owner thereof had or might sustain by reason of the same, taking into consideration at the same time, the advantages as well as the disadvantages arising therefrom to the owner of the land, was only intended as a guide to the jury, in regard to the course they should adopt and pursue, in order to ascertain whether any damage had or would be sustained at all, by the owner of the land, and if any, what amount, so that they might accordingly report, by their verdict, the result or conclusion to which they were brought by the course of investigation thus prescribed. That this is all that is required by the act, of the jury, will appear perfectly manifest, by taking the case of an owner, whose land is occupied in part by the

road, but who is compensated for his loss in this respect, by the advantages derived from it, in advancing the value of the residue of his land to what, or more than the whole of it was worth before. In such case it is scarcely possible to imagine any good reason why the value of the land occupied by the road, should be reported by the jury: but it proves incontestibly, that it is the amount of the damages that is to be reported, when they have been sustained, and not the value of the land, by the jury in any case. The jury then having reported by their verdict here, the result of their inquiry, showing that in their opinion, the complainant below had sustained damage to a certain amount, would appear to have done all that is required in this behalf by the act; provided it does not appear by the report itself, to have been founded upon an erroneous basis, a question which is raised here, and will be noticed under the third exception.

We are also of opinion, that the second exception is not maintainable in this case. The complainant below, it must be observed, claimed compensation for so much of his land as was actually *occupied* by the road, and not for any required by the plaintiffs in error or company, for the erection of warehouses, toll houses, carriages, cars, or other works and appendages necessary for their convenience; which, under the provisions of the act, they might have required, had they been necessary. And had any portion of the complainant's land been taken or required for any or all of these latter purposes, and he claimed compensation for it, it may be, that it would have been proper, if not indispensably requisite, that the extent of the land so required should have been made to appear on the face of the proceedings in some way, so that the limits of it might be capable thereafter of being ascertained and identified. This, however, not being the case which is presented, it is conceived that the location and completion of the work of the road, designate, with sufficient certainty, the land of the complainant below, which has been taken by the plaintiffs in error for the purpose of constructing the road.

The third exception, however, we consider fatal to the verdict of the jury, and judgment of the Court thereon. It is evident from the terms of the verdict, that the jury in assessing the damages at twenty-eight hundred dollars, which, in their opinion, the complainant below had sustained, have allowed to him a portion of this amount, but how much does not appear, on account of a claim which he made before them against the company, or plaintiffs in error, to enable him to erect a bridge over the road for the purpose of having a convenient passsage from one part of his farm to the other, it being divided into two parts by the road. That it is the duty of the company to make a bridge over the road when requisite for such purpose, cannot, I apprehend, be well questioned; for it is expressly enjoined upon them by the fourteenth section of the act:

(Philadelphia, Wilmington, &c., Rail Road Co. *v.* Trimble.)

but then the twelfth section, which seems to point out the duty of the jury, and to limit their authority, by designating and referring specifically as it were, to the various matters which they shall act upon and take into their consideration in forming their verdict, leaves the fourteenth section and every thing mentioned therein, entirely out of view. It would, therefore, be extending the jurisdiction of the jury, beyond what the legislature must be considered as having intended, to include and submit to the decision of a jury, under the provisions of the twelfth section, the things mentioned in the fourteenth section. But if the intention of the legislature in this respect were even doubtful, it would be unnecessary if not altogether wrong, to give such extended construction to the twelfth section; because it would tend to deprive the parties of having any difference arising between them as to those matters mentioned in the fourteenth section, determined by a jury under the immediate advice and direction of a Court learned in the law. For if it be the case, that the complainant below is entitled, under the provisions of the fourteenth section of the act, to have a bridge erected by the company, he is not without a remedy, though the act be silent in regard to it, because the common law will supply that, as in every other case of an existing legal right on the part of the plaintiff to demand the performance of a duty by the defendant, which the latter is bound in law to discharge.

The proceedings and judgment of the Court below are therefore quashed.

                                        Proceedings quashed.