The Milwaukee & Mississippi Railroad Company vs. Eble.

---

## THE MILWAUKEE & MISSISSIPPI RAILROAD COMPANY vs. EBLE.

1. TAKING LANDS FOR RAILROAD PURPOSES — COMPENSATION.— Before any permanent occupation or possession can be taken or had of lands required for railroad purposes, such compensation therefor as may have been agreed on between the company and the land owner, or ascertained according to the provisions of the charter, must be actually paid or tendered.

2. VALUE OF LANDS — AS OF WHAT TIME. — The value of lands taken for railroad purposes is to be fixed as it is at the date of the appraisement by the commissioners appointed to ascertain the same, and not as at the date of the location of the line by the company.

3. RULE OF DAMAGES AND VALUATION. — The land owner should be allowed such sum as will make him as good as if the railroad had not been located on his land, and had passed over adjoining lands and not over his.

4. SAME — FENCING. — Where the company is not required by law to fence its road, if it is or will be necessary to erect and maintain fences along the line of the road, the cost of erecting and maintaining them is a proper item of damages to be allowed to the land owner.

5. SAME — DEDUCTION FOR BENEFITS. —Under a charter which provided that there should be paid to the land owner " the value of the land taken or required, and the damages which the owner shall have sustained or may sustain by the taking of the same, over and above the *benefits* which will accrue to such owner from the construction of the railroad, *general* benefits or advantages resulting to the locality, shared by him in common with others, and accruing from the construction of the road through that locality, are not to be deducted; but if the construction of the road is of any especial advantage to him, as, if it makes any particular lot more salable than others, or drains some part of the land, or fertilizes it, or if it opens an avenue

The Milwaukee & Mississippi Railroad Company vs. Eble.

to him not common to others; for all such and similar advantages and benefits, a proper deduction may be made from the *damages*.

6. SAME. — Under a charter providing for ascertaining the value of the land taken, and also the damages sustained by the owner by reason of the taking of the same, deducting special benefits accruing to him, if any, the value of the land taken and the damages must be found and stated separately, and deduction can be made on account of special benefits, from the *damages* only, and not from the value of the land taken.

7. EVIDENCE. — Although the rule is, that the opinions of those not experts is not admissible, yet this rule must have a reasonable application, and on a trial of a case for condemnation of lands for railway purposes, it is competent to show that the land not taken would require more fencing on account of the road; that the fences if crooked or made of rails would cover part; that in places the fence would be liable to float away on account of periodical flooding of the lands, and the cost of such fence, although not strictly matters of fact, but of facts blended with the deductions of common sense and observation applied to the matters in question.

8. SAME. — Upon the trial of such an issue it is competent for the company to show that the periodical flowing of water upon the lands of the land owner not taken, and its being stopped by the railroad, would have a tendency to convey alluvium to and enrich such lands.

(See note at end of case.)

(4 Chand.; 68.)

ERROR to the Circuit Court for *Milwaukee* County.

Appeal by the defendant in error *Eble*, from the award of commissioners appointed to ascertain the value of the lands taken by *The Milwaukee & Mississippi Railroad Company* for the track of its road located across the lands of the defendant in error, and for the damages which he had sustained by reason of the taking of the same. The proceeding was instituted under the charter of the Milwaukee & Waukesha Railroad Company, laws 1847, 194, the name of the company having been changed to the Milwaukee & Mississippi Railroad Company. The amount of the award was tendered to the defendant in error, and, upon the trial of the appeal in the circuit court, the title of the defendant in error to the lands in question was admitted. On the question as to the expense of fencing along

the line of the railroad, one witness testified that he thought it would cost fifty cents a rod to build a rail fence, but it would be liable to be swept away by freshets; that a post and rail, or post and board fence would be more suitable; but all this evidence was objected to by counsel for the company, but the objection was overruled and the testimony was allowed. Another witness, against like objection, was allowed to testify that the land would require more fencing on account of the railroad, and the fences, if crooked, would cover part; that there is a waste with any fence; a part of the way along the railroad line, a rail fence would float off; thinks about three-eighths of the way; a post and board fence would be more secure; the materials for such fence would cost from fifty to sixty cents for every twelve feet, and the putting up would cost ten cents per rod; a rail fence would be most suitable for the balance of the line, but it takes the most ground. One witness was asked if he knew of any sales of lands in the vicinity of *Eble's* farm, in May, 1850. This was objected to, on the ground that the railroad was located and the lands taken by the company in 1849, and that the value of the lands at any subsequent time was irrelevant, and that the increased value of the lands, occasioned by the location or construction of the railroad should not constitute any part of the estimate of the land owner's damages. The objections were overruled, and the witness was allowed to testify upon these points. On cross examination, the witness was asked whether it would be the tendency of water flowing over the land (which would be turned upon it periodically by the building of the road), to leave a deposit beneficial to the land. This was objected to by counsel for the land owner, and the objection was sustained. Another witness, one Hart, called for the company, was asked whether the flowing of the water upon the land of *Eble*, and its being stopped by the railroad, would have a tendency to convey alluvium to and enrich the land. This question was objected to by counsel for the land owner, and the objection was sustained.

The court instructed the jury as follows:

There are two questions for the jury to pass upon: 1. What is the value of the appellant's land taken by the railroad company? The evidence shows that three acres and 65-100 to 72-100 of an acre are taken. For this you should allow the retail salable value at the *time of the appraisal by the railroad commissioners*, to wit: in May, 1850. I say at the time of the appraisal, for the company were not authorized to take and appropriate that land until they had caused it to be appraised, and had paid for it, or deposited the money in court.

When that was done, they could take the land and occupy it, although an appeal was brought. By our constitution, no man's private property is to be taken for public use until it is *first* paid for. In this case, the company had the land appraised, and paid the amount of the appraisal in May, 1850, and hence they are in lawful possession. But the owner, *Eble*, complains that he has not been paid enough, and you are now to find what was, in fact, the value of the land when taken. You will judge of it by the evidence, and by your own observation and knowledge.

It is not a question how much a man would ask for a strip of land taken, as that was taken, through his farm; but what was that quantity of land, of that quality, worth at that time, for sale or use per acre. And you are to judge of it by the selling value of other similar lands in that neighborhood, and by the uses to which it may be put.

Secondly. You are to find over and above the value of the land taken, what damage the appellant has sustained by reason of the taking of this land by the company. The constitution requires payment of the value of the land taken, but the statute gives the owner further — his damages, if there be any, by reason of the taking of his land, over and above benefits.

On this branch of the case you will also be guided by your examination, and by the testimony. A question has been raised by the defendant's counsel, whether the cost of fencing

along the line of the railroad may be taken into the account. I think, on this point, that if you find it is or will be necessary for the appellant to erect fences along the line of the railroad, you may allow such sum as would enable him to erect and keep up continually a fair, suitable fence. If the land is arable or tillable, or is, or may be used for meadow or pasture, a proper fence to protect the crops or confine the cattle should be regarded, but if it is wild or unoccupied, you may consider what, if any, fence, would be required, and make a proper allowance for it when you think it will be required. On this subject your guide may be to give the appellant so much money as will make him as good as if the railroad had not been located upon his land. So, also, the damages to the appellant in other respects, in case you should find any. Your inquiry will be, what sum will make his farm as valuable as it would be if the railroad had passed over his *neighbor's* farm and not over his. If the railroad is of general advantage to the neighborhood and town where the appellant lives, the appellant is entitled to share this common benefit with the rest of his fellow citizens. If, however, it is of any special advantage to him; if it makes any particular lot more salable; if it drains some part of the land, or if it fertilize some part of it, or if it opens an avenue to him *not* common to others, all such and similar advantages and benefits should be considered by you, and be deducted from the damages which you may find.

On the whole, then, gentlemen, you are to look at the case fairly and carefully as common sense men, and allow the appellant such sum as will really and truly pay him for his land and damages.

You should be equally as careful to see you give him full enough, as to see you do not impose on the company too much. The company is engaged in a valuable public and private enterprise. They are pursuing their legal rights. They are entitled to the benefit and protection of the laws of the state. So also the appellant is pursuing his legal rights. He is not

bound to furnish the railroad company with a route without fair, full compensation for his property and his injuries. He is to be made as good as if the railroad company had kept away from him. That is his just right, and that is all. You will now take the case and do justice to both the parties. You may find in two sums: first, the value of the land; secondly, the amount of appellant's damages besides the value of the land.

To all of which charge relating to the rule by which the jury should arrive at the amount of the compensation to be rendered to the defendant in error, the plaintiff in error excepted.

The appellant *Eble* had a verdict increasing the assessed value of the land taken, and the damages sustained by reason of taking it, upon which he had judgment, and the railroad company sued out this writ of error.

*Brown & Ogden*, for plaintiff in error:

1. The court erred in deciding that the value of the land taken should be estimated as of the time of the appraisement by the commissioners and not at the time of the location of the road and the actual taking possession by the company; and that a law authorizing possession by the company before payment of damages would be unconstitutional. A law authorizing it to take possession, but providing a suitable remedy to the owner, is valid. 20 Johns., 104; 7 Johns. Ch., 342–344; 2 Pa. St., 398; 1 Chand., 71 (2 Pin., 131). The company had by its charter the right to take possession and use the land, subject to the payment of damages as prescribed. Laws 1847, pages 198, 199–203, secs. 10, 11 and 19; 14 Wend., 51; 2 Hill, 342; 4 Whart., 53; 18 Wend., 51. And all right of action at common law is taken away. 5 Whart., 256. The rule as to the time at which the value of the land is to be estimated should be determined by the time when the *right* of the company to take became perfect, and it became perfect by the location of the track.

2. The court erred in instructing the jury as to the rule of damages and valuation. Act of 1847, sec. 11; 8 Barr., 445;

7 Blackf., 209; 4 Whart., 53; 4 Watts & Serg., 262; 8 Wend., 101; 8 Watts, 245; 3 Paige, 71; 11 Wend., 149, 154.

3. The court erred in admitting the opinions of witnesses as to the effect of the construction of the road on plaintiff's lands. 7 Wend., 72–78; *Ramadge v. Ryan*, 9 Bing., 33; 1 Chand., 178, 264 (2 Pin., 215, 284).

4. The court erred in not allowing witnesses to testify as to the effect of the stream in leaving a fertilizing deposit on *Eble's* land.

*E. G. Ryan*, for defendant in error:

This charter, for public ends, permits the invasion of private right. Public policy tolerates this invasion as a necessary evil, but does not sanctify it.

Such powers as this charter confers are always abused; the insolence of power holds the public end as everything, and overlooks the private right as an insignificant obstacle. Construction, in their discretion, becomes usurpation.

The great ends sought to be accomplished by such means tend even to mislead courts and to warp great legal minds from the best settled rules of law.

Even the illustrious chancellor of New York was misled by his hopes and anxieties for the Erie canal, from the better doctrines of his unbiassed mind (2 Johns. Ch., 166, 167); and in a case relating to that great work, quoted by the plaintiffs in error (7 Johns. Ch., 341, 342), states the rule of construction, to be "always to advance the public interest, doing as little damage as possible to the private interest."

But this departure from well settled rules of construction, has not been affirmed even in his own state, even under the fervor of internal improvements there; and the true rule of construction is that statutes in favor of corporations and in derogation of private right should be strictly construed and should not be extended beyond their express words or clear import; that they cannot take away a common law right unless the intention is manifest, and are not to be extended

even by equitable principles. *Sprague v. Birdsall*, 2 Cowen, 419; *Coolidge v. Williams*, 4 Mass., 145; *Melody v. Reab*, id., 473; *Bentley v. Knoller*, Peters, 268. In this state, private right can still look to the judiciary for protection against corporate arrogance; and on this well settled rule of law, asks the court to construe the charter of the plaintiffs in error.

The sections of the statute involved in this case are §§ 10, 11 and 12. And their interpretation has hitherto seemed very obvious to all persons except the beneficiaries of them. The first clause of § 10 authorizes a mere entry on private lands for purposes of exploration and survey. The second clause provides that it shall be lawful for the corporation to take possession and use, subject to payment of what the corporation *may have agreed* or as *shall be* ascertained as provided for in § 11. Any ambiguity in the tense of " shall be ascertained " seems to be explained by relation back to "shall be lawful" clearly signifying dependent acts; shall be already ascertained; so also, by comparison with the alternative " may have agreed."

But in any construction of this language, the difficuly is solved by the word " subject." The right shall be *subject* to the payment. This makes the payment a condition precedent to the right. *Buonaparte v. Camden and Amboy R. R. Co.*, Baldwin, 228, 229.

This construction is made very manifest by the concluding proviso of § 11. This section, after providing for the manner of ascertaining compensation, provides finally that upon the filing of the report of the commissioners and payment or tender of the amount awarded, the corporation may immediately take possession and use the land, without awaiting the issue of any appeal.

This special grant of power to take possession at this stage of the proceedings, plainly negatives the presumptive right claimed by the plaintiffs in error under § 10, even without aid from the rule of strict construction.

It is noticeable that § 10 gives a right to *enter* to explore,

survey and *locate* the route of the railroad; and again gives a right to enter, take possession and use, *subject*, etc. This clearly contemplates a new entry after the location; why provide for a second right of entry, if according to the construction of the plaintiffs in error, the first entry being made complete by the location, gave a continuing possession, without awaiting the assessment or payment of the compensation?

It is true that the body of § 10 provides for the application for commissioners by either party, and provides equally for lands taken or required by the corporation; but this adds nothing to their power, this only provides for cases where, as in this, they have taken possession before their right to take possession had accrued.

The concluding proviso of § 11, which gives the right of possession on payment of the award, is followed in logical order by § 12, which vests the fee in the corporation upon payment of the final judgment.

Viewed as this proceeding should be, as a compulsory purchase by the sovereign in the right of eminent domain (1 Black. Com., 139), by the machinery of a corporation, the construction of these sections is very simple. A right of exploration is given absolutely, as requisite to determine whether the purchase be necessary; if found to be necessary, the purchase price is to be ascertained by commissioners, subject to an appeal; on the payment of the price so ascertained, and presumptively fair, the right of possession is given to the purchaser, to avoid delay; but the estate in the land remains in the forced vendor, as security, until the payment of the final adjudicated purchase price, in case the first award should be increased.

Whether or not they had such power, the legislature plainly had no intention of subjecting the private land owner either to the solvency or to the integrity or to the arbitrary disposition of the corporation.

One other point of construction arises on § 11. It is claimed by the plaintiffs in error, that benefits may be deducted from

the *value* of the lands. We contend that the compensation provided for by § 10 and so named in the constitution is the value of the land taken, and in addition thereto the damages, if any, of taking it over the benefits conferred by the work for which it is taken ; but that the value of the land must always be paid without reference to benefits ; the damages are given in addition, in view of the compulsory character of the purchase. And this we believe is amply provided for by § 11.

This section provides that when an agreement cannot be made for the purchase of the land *or* for the damages sustained *or* as to the compensation to be paid, commissioners shall be appointed to estimate the value of the land, *and* all damages which the owner shall sustain by reason of taking it for the railroad, taking into consideration the advantages as well as disadvantages of the same ; that the commissioners shall be sworn to examine the land and appraise the value of the same, *and* the damage or injury which the owner may sustain by reason of the taking and using thereof, over and above all benefits and advantages ; that the commissioners shall then " proceed to examine the premises and estimate the value of such land, AND *the amount of damages, if any, over and above the benefits and advantages which may accrue to such owner*, as aforesaid ;" that the commissioners shall report to the court ; that if no appeal be taken, judgment shall be rendered on motion of either party ; that either party may appeal, and the appeal shall be tried as other cases ; that the jury impaneled to try the same shall find the value of the land, *and* the damages sustained over and above the benefits accruing to the owner ; and that judgment shall be entered accordingly.

If plain language be susceptible of plain construction, against the grasping interpretation of this corporation, or if there be any force in iteration, there can be no doubt here. Wherever in these sections the aggregate amount to be paid is spoken of, it is called compensation, valuation or appraisal ; but wherever the duty of the commissioners and the jury is spoken of in de-

tail, the words value *and* damages are invariably used ; showing two several grounds of compensation, value for purchase and damage for taking.

It is inconceivable why this consistently iterated distinction should be maintained, if the *whole* finding of value and damages were subject to deduction for benefits. To what end this sustained and marked separation ? Why the uniform rule of providing for the value absolutely, and subjecting the damages to the benefits ?

The finding in all cases is to be the value as one amount, and the damages over benefits as another amount; but no where is a finding of benefits over damages provided for. This clearly shows that the benefits were never to be deducted from the value. The framer of that section knew the force of language and the strength of corporate appetite; and he evidently labored to secure to the land owner whose private right this corporation was licensed to invade, first the value of his land intact, and second his damages over benefits.

If the value were subject to deduction for benefits, the constitutional guard would be broken down ; for the benefits might be part, might be all the value of the land taken ; and in either case, equally in principle, would there be a taking " without just compensation therefor."

It was plainly the intention of the framer of these sections to preserve the constitutional right inviolate; and justly, properly, and in a spirit of wise and benignant legislation, while advancing the public interest, to maintain private right whole, by giving in addition to the value of the land, the damages for the taking over .and above the benefits conferred. In no other sense can the passage from § 11 above quoted literally, be understood. The use of the words " if any " marries the benefits to the damages, and divorces them from the value. Such has been the construction of the supreme court of New Jersey, of a statute much less emphatic than this. *New Jersey R. R. Co. v. Suydam,* 2 Har., 25, 28 ; *Ross v. Elizabeth T. & S. R. R. Co.,*

1 Spencer, 230, 234. And this rule so established is just. The value of the land sounds *ex contractu,* the damages *ex delicto;* and they ought not to be merged. To provide that the compensation guarantied by the constitution for land compulsorily taken, could be made by benefits to other lands compulsorily inflicted, would be not a mere invasion, but a violation of the constitution. The provision is for payment of value, not for equivalent benefits. And the rule so established is just and equitable, and in conformity with the views of the most distinguished jurists. See Baldwin, 230, 231.

This special construction is sanctioned by many cases in which, with far less certain guides, the courts have sought to construe such statutes by the constitutional and equitable rights of private property. Baldwin, 224, 225; 18 Wend., 19, 40, 78; 3 Whart., 558.

If this construction of these sections is to prevail, it will obviate most of the points made in this case. But it is deemed proper to meet them on general grounds also.

I. The power of the state to take private property for public use is subject to a just compensation, *first* to be made therefor. State Const., art. 1, sec. 13. And any act of the legislature authorizing it to be taken, without providing for such compensation as a condition precedent, is either unconstitutional, or at best inoperative until further legislation shall provide for it. *Buonaparte v. Camden & A. R. R. Co.,* Baldwin, 205; *Gardner v. Village of Newburg,* 2 Johns. Ch., 162; *Bloodgood v. Mohawk & Hudson R. R. Co.,* 18 Wend., 1; *Fletcher v. Auburn & Syr. R. R. Co.,* 25 Wend., 462; *Presbyterian Society v. Auburn & Roch. R. R. Co.,* 3 Hill, 170; *Seneca R. R. Co. v. Auburn & Roch. R. R. Co.,* 5 Hill, 567; *Gloucester v. Essex,* 3 Met., 375, 378; *Thompson v. Grand Gulf R. R. Co.,* 3 How., Miss., 240; *Doneher v. The State,* 8 Smedes & M., 649; *Tuckahoo Canal v. Tuckahoo R. R.,* 11 Leigh, 42, 76, 78; *Harrisburgh v. Crangle,* 3 Watts & S., 460; *Mayor of Pittsburgh v. Scott,* 1 Barr, 309; *Jackson v. Winn,* 4 Litt., 322, 328.

It is true that it has been said on high authority, in some of these cases, that it may be sufficient if an appropriate remedy is provided and upon an adequate fund. But the weight of authority, the reason of the rule, and the sacred character of the constitutional right is against this doctrine. And, indeed, it seems limited to cases where the state or some of the subordinate municipalities take directly for the public use, and can be compelled to raise the means of paying by mandamus. A wide distinction should be drawn between the state, acting itself, with the legal presumption of its ability and justice, and a corporation, in whose favor neither presumption arises. But, if correct, Chancellor WALWORTH's rule equally protects us in this case, where no adequate fund is shown, or is presumable.

The counsel for the plaintiffs in error have cited on this point *Bradshaw v. Roberts*, 20 Johns., 104, and *Jerome v. Ross*, 7 Johns. Ch., 342, which were both cases arising under the construction of the canals by the state, and are so far distinguishable from this case. In the case of *Bradshaw v. Roberts*, the supreme court take substantially, though with less precision, the ground afterwards adopted in *Bloodgood v. M. and H. R. R. Co.*, 18 Wend., 1; but the judgment of the supreme court in *Bradshaw v. Roberts* was reversed by the court of errors, 20 Johns., 735. In delivering the opinion of the court of errors, Chancellor KENT does not affirm any different general principle, but seems preparing his own mind and the profession for his rulings in 7 Johns. Ch., 342, by vague doubts thrown out, whether an act taking private property, without providing for compensation, would not be constitutional and operative. Accordingly, in the latter case, which was one of a temporary occupation, "doing no unnecessary damage," and not of a permanent appropriation, the chancellor does not positively settle the question, whether or not compensation is provided for such a use of private property, but says: "If the owner is paid for the damage occasioned by the temporary use of his lands, it is all he can justly require; and this compensa--

tion the state is bound to give him. If the act has omitted to make any provision for the assessment and payment of damages for such temporary use, *it may have escaped the attention of the legislature*, or the case may have been *deemed at the time immaterial and unimportant.* The omission, however, if it be one, does not prevent the right of the commissioners to enter and use the land, nor prevent the just claim of the owner upon the commissioners, or the legislature, for his reasonable compensation. The commissioners are not trespassers, when the act authorizes them to enter, if they enter before the damages are paid for. This was so understood and declared in *Roberts v. Bradshaw*, already referred to. *The claim for compensation arises after the use has been had;* and the damages cannot well be assessed before they have arisen." This singular language is used by the chancellor, saying : " If ever there was a case in which all petty private interests should be made subservient to the interest of an entire people, this is one."

But all that was really decided in *Roberts v. Bradshaw*, and *Jerome v. Ross*, was that trespass did not lie against the commissioners.

The intense excitement which accompanied the first construction of the Erie canal is still remembered. *Ira furor brevis*; excitement is the shadow of insanity, and the greatest minds lose sight of fixed principles in the enthusiasm of energy. But, without pausing to consider how far the chancellor's views may have been appropriate if confined to the particular case before him, it is sufficient to say, that such a wide departure from settled principles of law was rebuked even in his own state.

In *Bloodgood v. M. & H. R. R. Co.*, 18 Wend., 51, also quoted for the plaintiffs in error, doctrines are asserted similar to those in *Jerome v. Ross*, and on the authority of that case; and the construction here contended for by the plaintiffs in error, was given to a much more loose charter than this.

But in the court of errors, *Bloodgood v. M. & H. R. R. Co.*,

18 Wend., 1, is reversed; the construction we contend for is given to the charter in that case; and the peculiar doctrines of that case, and of *Jerome v. Ross*, on the constitutionality of laws not providing for compensation are emphatically repudiated.

The chancellor puts a construction upon *Rogers v. Bradshaw*, in the court of errors, going very far to mitigate the objectionable doctrines of that case; and puts it upon the ground that an adequate remedy and a sufficient fund were provided for by the law. He then adds: "To this extent the opinion of Chancellor KENT, in *Rogers v. Bradshaw*, must be considered as the settled construction of the constitutional provision on this subject, at least in this state. I cannot, however, agree with my learned predecessor in his subsequent reasoning in that case, upon which he afterwards acted in *Jerome v. Ross*, that it is not necessary to the validity of a statute authorizing private property to be taken for public use, that a remedy for obtaining compensation by the owner should be provided. On the contrary, I hold, that before the legislature can authorize the agents of the state and others to enter upon and occupy, or destroy or materially injure the private property of an individual, except in cases of actual necessity which will not admit of any delay, an adequate and certain remedy must be provided, whereby the owner of such property *may compel* the payment of his damages; and that he is not bound to trust to the justice of the government to make provision for such compensation by future legislation. The compensation must be either ascertained and paid to him, or an appropriate remedy must be provided *and upon an adequate fund*, whereby he may obtain such compensation through the medium of courts of justice, if those whose duty it is to make such compensation refuse to do so." MAISON, senator (p. 34 to 45), and TRACY, senator (p. 72), hold still stronger views, and uses still stronger language. The case in 2 Hill, 342, proceeds upon the same general views of the peculiar policy of that state. It will be seen that in all

these cases in New York the doctrine of dispensing with actual payment, as a condition precedent, is a relaxation in favor of the presumptive ability of the state, and seems to have its origin in a Kentucky case. *Gashweller v. McIlroy*, 1 A. K. Marsh., 84.

It is assumed that the state, county or municipality, being able and bound by law to levy a tax, the public purse, in the words of Chancellor WALWORTH, may justly be considered an adequate fund. But he draws, also, the distinction between the public purse and the responsibility of a corporation, saying of the railroad company in that case, " no adequate fund was provided for the payment of the damages when ascertained." 18 Wend., 19. But the rule originally held in New York, and so well sustained by other authorities cited, is the safer and better established rule. And it is apparent from all the cases cited, that the courts in New York, having been led astray by extra-judicial zeal, are gradually retracing their steps with decent haste, until they can once more replace the rights of private property under the sacred safeguard of the constitution. In the meantime, this rule is rather a matter of state policy than of general law.

The application of the Pennsylvania cases cited is not perceived. In none of these cases was the question presented or passed upon by the court. *Lauderbrun v. Duffy*, 2 Barr., 398, was the only one of these cases where the question could have arisen; but the case is put and decided entirely on the construction of the charter. In *Levering v. Philadelphia, G. & N. R. R. Co.*, 8 Watts & S., 459, the court expressly say the question does not arise; and the whole leaning of the case, deciding that the fee does not pass till payment made, is with us. In addition to the authority of *Harrisburgh v. Crangle*, and *Mayor of Pittsburgh v. Scott*, already cited, the supreme court of Pennsylvania seem, in another case, to have leaned decidedly against the doctrines of the plaintiff in error. *Schuler v. Northern Liberties & P. T. R. R. Co.*, 3 Whart., 555. The question

did not arise and was not passed upon by this court in 1 Chand., 71, cited on the other side. On the whole, we claim that the decisive weight of reason and authority is with us on this question. And whether this court adopt the rule affirmed in 18 Wend., or that in 11 Leigh and other cases, the law is with us in this case.

II. Without reference to the preceding point, the charter of the plaintiff in error makes payment a condition precedent.

No further argument will be added on this point. Many of the cases cited will aid this point of construction.

III. If the court sustain us on either of the preceding points, the time at which the value of the land should be estimated, follows of course. The right did not and could not accrue to the plaintiffs in error till the assessment and tender of compensation. Any other construction would lead to the absurdity that the corporation might locate the road, postpone its construction for years, with an absolute power to change the route and carry it elsewhere, and thus acquire to itself the increased value of the land it had not purchased. It would thus have both the use of the price and the increase of the land.

It is no answer that we also might apply for commissioners, for the company might at any time evade us by altering their plans. *Matter of Dover Street*, 18 Johns., 505; *Matter of Beekman Street*, 20 id., 269; *Matter of Canal Street*, 11 Wend., 15; *People v. Brooklyn*, 3 id., 322. And it is to be considered that *they* were compulsory purchasers, we compelled vendors. It was not for us, but for them to take the initiative towards vesting a right in them adverse to us. If, however, our construction of the charter be sustained, the point does not admit of debate, for we claim that the charter fixes the time.

But the point does not arise here. No evidence was offered of the time of the legal location of the railroad. Location, in this view, must be by some certain, definite act of the corporation or its officers, susceptible of investigation and proof. It cannot rest in the loose, revocable acts or declarations of engi-

The Milwaukee & Mississicpi Railroad Company vs. Eble.

neers, officers or laborers. Tending to divest private right, it must be definite and ascertainable.

Notwithstanding the dictum in 2 Hill, 342, not sustained by the case cited to it, if the corporation or its laborers went into possession before acquiring a right, they were mere trespassers, and cannot be permitted to set up their own trespass as an acquision of the right. But the legal location was a condition precedent, and they were bound to show it, if they desired to avail themselves of it. Baldw., 224, 225 ; *Harvey v. Thomas*, 10 Watts, 63.

IV. The admission and exclusion of evidence excepted to was correct. The charter provides for the assessment of damages which the party may sustain by the taking of the land by the use of it for the railroad. It has been often decided that a railroad company, in the exercise of their chartered right of running locomotives and trains, are only liable for damages arising from negligence. *Dodge v. Essex*, 3 Met., 380; *Bordentown & S. A. Turnp. R. v. Camden & A. R. R. Co.*, 2 Har., 314. And the assessment of damages covers all such risks to the persons whose lands are traversed. *Railroad Company v. Yeister*, 8 Barr, 366.

Here there was to be an assessment of future and contingent damage, necessarily resting in opinion of future occurrence. The charter of the plaintiff in error imposes this necessity, and it does not lie with it to complain of its provisions. The application of the rules of evidence must be reasonable. Here is a case where opinion or judgment, founded on experience, must be used, or justice cannot be done. The witness Chase confines himself, under the question, to simple facts. The witness Ross gives judgment of future occurrence, resting upon experience, when future occurrence was the proper subject of inquiry. But settled rules admit, in such cases, a much wider latitude of opinion than was used in this case. *Webber v. Eastern R. R. Co.*, 2 Met., 147; *Harvey v. Loyd*, 3 Barr, 331, 341; *Kellogg v. Krause*, 14 Serg. & R., 137, 141; *Chapman v.*

*Walton*, 10 Bing., 57, 25 Eng. C. L., 28; *Davis v. Mason*, 4 Pick., 156; *Richards v. Murdock*, 10 Barn. & Cres., 527, 21 Eng. C. L., 122, 126. It is not believed that the plaintiffs in error can seriously insist that it should have been allowed to prove that flooding the defendant in error's land, by the misconstruction of its own embankment, was a benefit to him.

V. The instructions of the court, on the rule of valuation and damages, were correctly given.

The question now arises, were the commissioners to estimate the value of the land at the *time* the appraisement was made, or at the time the route was determined? The fixing of the route was optional with the company. It might be determined and changed. It might or might not be a fact known to the land owner. The company might elect to proceed no further; and although the land owner, when the route was determined by the company, was authorized to procure the appointment of commissioners by the circuit judge, and have an appraisement made, by which the rights of the parties would be fixed, except in case of an appeal, yet he was not bound to do so. The company were seeking, by an exercise of the right of eminent domain under their charter, to effect a compulsory purchase of his property, and he might properly wait until they had taken such steps as not only to disclose a possible, but an absolute intention to take and hold his land, before he moved in the matter. When the company, in this case, procured the appraisement to be made, they first made public the fact that their route was determined, and that they intended to take and use this land in particular, pursuant to their chartered rights. That would seem to be the proper time to ascertain the value of the land they had so selected to take.

The circuit judge was therefore correct in telling the jury to find the value of the land at the time the appraisement by the commissioners was made.

It is alleged that the court erred in instructing the jury as to the rule of damages and valuation.

It is somewhat difficult to meet an objection so general and undefined in its terms. The charge of the judge on this point was as follows: "There are two questions for the jury to pass upon: 1st. What is the value of the appellant's land taken by the railroad company? The evidence shows that three and 65-100 of an acre is taken. For this, you should allow the retail salable value at the time of the appraisal by the railroad commissioners. It is not a question how much a man would ask for a strip of land, taken as that was taken, through his farm, but what was that quantity of land, of that quality, worth at that time, for sale or use, by the acre. And you are to judge of it by the selling value of other similar lands in that neighborhood, and by the uses to which it may be put. 2d. You are to find, over and above the prices of the land taken, what damage the appellant has sustained by reason of the taking of this land by the company. The constitution required payment of the value of the *land taken*, but the statute gives the owner further, his damages, if there be any, by reason of the taking of his land, over and above benefits. On this branch of the case you will be guided by your examination" (the jury visited the premises by order of the court), "and by the testimony. A question has been raised by the defendant's counsel, whether the cost of fencing along the line of the railroad may be taken into the account. I think, on this point, that if you find it is or will be necessary for the appellant to erect fences along the line of the railroad, you may allow such sum as would enable him to erect and keep up continually a fair, suitable fence. If the land is arable or tillable, or is or may be used for meadow or pasture, a proper fence to protect the crops or confine the cattle should be regarded; but if it is wild or unoccupied, you may consider what, if any fence, would be required, and make a proper allowance for it when you think it will be required. On this subject, your guide may be to give the appellant so much money as will make him as good as if the railroad had not been located on his land. So, also, the

damages to the appellant in other respects, in case you should find any. Your inquiry will be, what sum will make his farm as valuable as it would be if the railroad had passed over his neighbor's farm, and not over his? If the road is of general advantage to the neighborhood or town where the appellant lives, the appellant is entitled to share this common benefit with the rest of his fellow citizens. If, however, it is of any especial advantage to him; if it makes any particular lot more salable; if it drains some part of the land, or if it fertilizes some part, or if it opens an avenue to him not common to others, — all such and similar advantages and benefits should be considered by you, and be deducted from the damages which you may find."

VI. An improper question not answered; a question seeking incompetent evidence, but answered by competent evidence; incompetent evidence, immaterial to the finding; misdirection of the court on questions not material to the finding; all these are not error. *Culbertson v. Stanley*, 6 Blackf., 67; *Van Vacter v. McKillip*, Blackf., 578; *Kerchevel v. Ambler*, 4 Dana, 166; *Shackleford v. Miller*, 9 Dana, 273; *Stokes v. Upper Appomatox Co.*, 3 Leigh, 818, 342; *Unangst v. Kraemer*, 8 Watts & S. 391, 401.

It is inconceivable how the admission of the testimony of the witness Ross, the exclusion of the question put to the witness Hart, the charge of the court below on the constitutional question or in regard to the value of the land not being subject to deduction for benefits, or in regard to the rule of benefits, could have affected the finding of the jury.

It is believed that the plaintiffs in error ought to be fully satisfied with the rulings of the court below, which were able and impartial.

HUBBELL, C. J. This case presents several points of interest, both to the public and to the parties concerned; and it has been examined with a corresponding degree of care and attention.

While admitting, however, that particular rights may be more important than others, it is not designed to be intimated that the rights and interests of all parties coming before this court for adjudication, are not equally sacred. The law is the only rule and guide of the court. What the law authorizes or directs, must be enforced, as a legal right. Public and private rights, sanctioned by law, are equal; and by the law, is meant constitutional law. Should the legislature, in its discretion, pass an act, as the counsel for the defendant in error supposes it has done, in the present instance, which tolerates or permits the invasion of private rights it would be the duty of this court, to pronounce it unconstitutional. No rights could be acquired or maintained under such a law.

But when an act is passed, in conformity to that controlling instrument, from which alike legislative and judicial powers are derived, this court would fail in its duty, and would forfeit all public respect, could it be induced to pause in any particular case, and look at the parties, whether natural persons or corporate bodies, or at their rights, whether public or private, in determining the extent to which such law should be maintained or such rights enforced. To all such invitations, we must reply : We have not so learned our duty.

The charter granted to the plaintiffs in error (Sess. Laws, 1847, p. 194), is the foundation of all their rights, and of most, if not all the rights of the defendant in error, which will come under examination in the present case. Much learning and research were exhibited by counsel, in refreshing the mind of the court upon general constitutional principles, relating to the exercise of the right of eminent domain, on one side, and the correlative rights of private persons, on the other. Very little difference of opinion probably exists upon these questions, and it would be immaterial if it did. The plaintiffs in error contend : 1. That the court below erred in instructing the jury "to estimate the value of the land of the defendant in error, taken by the company, at the time of the appraisal by the

commissioners, and not at the time of the location of the road, and the actual taking possession of the track by the company." And also in saying " that a law authorizing possession by the company before actual payment of damages, would be unconstitutional."

As there is no question with any member of this court, that the company's charter required payment in fact, before any permanent occupation or possession could be had, and as the jury were so instructed, the general dictum of the judge, in regard to a law of a different character, was wholly immaterial. The other branch of the error assigned, requires an examination of several sections of the charter.  · The tenth section contains two distinct and important provisions, designed, as well as adapted, to accomplish distinct purposes.    The first enables the company to explore, *survey and locate* the track of their road; and for that purpose, authorizing them, their agents, etc., to enter upon any land, " doing thereto no unnecessary damage."   This purpose was temporary, and hence the right of entry was general, without provision for payment of any kind, and without restriction, except the doing of no unnecessary damage.    It was a grant of license to enter upon private property, in as broad and general terms as the sovereign state .had power to confer it.

The second clause of the section authorizes the company, when the route is selected and determined, to take permanent possession thereof ; and prescribes the manner and fixes the conditions upon which this may be done.    It is as follows :

" And when the said route shall be determined by the said company, it shall be lawful for them, their agents, etc., at any time to enter upon, take possession of, and use such lands, not exceeding four rods in width, along the line of said route, subject, however, to the payment of such compensation as the company may have agreed to pay therefor, or as shall be ascertained in the manner hereinafter directed and provided for in such cases, respectively."

Here is a general right to enter, to take possession, and to use, at any time; but made subservient to and dependent upon payment for the land, either as "the company may have agreed," or as the charter subsequently specifies. This view of the subject is made clear and imperative, by the last clause of the eleventh section. In the preceding part, provision is made for an appraisement by commissioners, and an appeal from their report, by either party, to the circuit court; but to prevent the delay in the prosecution of the road, incident to the appeal and judgment thereon, by which title to the property is to be effected by the company, the act declares "that upon the making and filing of any report, as aforesaid, and payment or legal tender of the amount of any valuation or appraisal specified therein, to the owner or owners of any such land, his, her, or their legal representatives, the said company, their agents, or the contractors, for making or repairing said railroad, may immediately take and use the same, without awaiting the issue of any appeal brought thereon." This clause would be quite superfluous, if the right were conferred by the tenth section to enter and permanently occupy the lands, before any appraisal, and before the payment or tender of any part of the damages or value of the land. But construing both clauses together, it is quite manifest that the legislature intended to confer no right of possession, except for the mere examination and determination of the route, until after the actual payment or tender of such compensation as may have been agreed to be paid, or found and reported by the commissioners appointed under the act.

1. As to the value of the land; it has been already seen that this was to be a separate finding, not subject to deduction for benefits. The only case cited for the plaintiffs in error which bears against this construction is, *Phil. & Wil. R. R. Co. v. Trimble*, 4 Whar., 47, but the authority of that case, as applied to this question, is completely overborne by a case decided twelve years after by the same court, which strongly confirms

our construction.   *Ohio & Penn. R. R. Co. v. Wallace,* 2 Harris, 245.   See also 2 Harrison, 28 ; 1 Spencer, 234.

Two cases in New York and one in Indiana are cited to show that benefits may be deducted from the value ; but those cases go apparently upon statutes very different from this.   But as the jury in this case found an excess of damages over benefits, the question whether the value of the land is subject to deduction cannot arise now.

2.  As to the rule of benefits, the court was correct in charging that the common advantages to the neighborhood were not chargeable as benefits to the defendant in error, but only such as were peculiar to his land.

No case is cited, and it is believed that none can be found giving a different rule, except some loose and pernicious dicta in *Railroad Co. v. Heister,* 8 Barr, 450.   But it must be borne in mind that this doctrine, such as it is, is used in a state where it is held that under the grants from the Proprietor of Pennsylvania and from the state, every man has an express grant of six acres in one hundred for roads, which he holds in trust for the state, to be reclaimed at her will; and that compensation for lands taken for roads is a *gratuity.*   *Harvey v. Loyd,* 3 Barr, 236, 242.   In all other states, it is believed the decisions will be found confined to the *particular* benefits to the *particular* land.   And this is the just rule.   Lands, through which a railroad runs, are generally less benefited by the work than those lying near but not upon it.   And it would be a peculiar injustice to make lands less benefited pay for the same benefits more largely conferred on others not liable to pay for them.   Railroads may, and often do, confer large benefits on lands in the vicinity; but the railroad company, undertaking a public enterprise for private profit, ought not to be permitted to tax those whose lands they take by a compulsory process, for a common, public advantage.

The true rule of compensation was fairly stated by the court below, in instructing the jury " to give the appellant so much

money as will make him as good as if the railroad had not been located on his land." ° But the point does not arise on the testimony. There was no evidence given or offered, by the plaintiffs in error, on which the rule they claim could have applied.

3. As to fencing: the charter of the corporation does not oblige them to maintain any fence along the line of this railroad; consequently, that expense devolves on the adjacent land owner, and is a proper subject of compensation. All injuries and expenses consequent on the taking of the land, and the use of it for a railroad, are a proper subject for damages. *Webber v. Eastern R. R. Co.*, 2 Met., 147 ; *Dodge v. Essex*, 3 Met., 380 ; *Railroad Co. v. Yeiser*, 8 Barr, 366, 375.

With respect to the rule of damages here laid down for the jury, two grounds of objection were urged in argument: 1st. The allowance of anything for fences was improper; 2d. General as well as special benefits ought to have been taken into account. Now the railroad company were not required by their charter to fence the line of their track, but they were authorized to cut through the fields or forests of private persons, and take the land in their own way and time, subject only to the payment of "the value of the land so taken or required, and the damages which the owner or owners thereof shall have sustained, or may sustain, by the taking of the same, over and above the *benefits* which will accrue to such owners from the construction of such railroad." The expense of fencing the land which remained to the appellant was certainly no part of the value of the land taken ; and inasmuch as the necessity for such fencing was created by the company by their act of taking, the expense of erecting and maintaining a suitable fence along the line of the road across the appellant's land, was properly included in his damages. The question whether any fence was necessary, and, if any, what kind of one, was properly left to the jury. As to the other ground of objection, it is true the charter furnishes no absolute rule for estimating benefits. The court must infer that a just and reasonable rule was

intended.   If general benefits accruing to landholders from the construction of this extensive improvement were to be regarded, then those who are subjected to a forced sale of their property to furnish the track, must suffer greater losses and inconvenience than the rest of the community.   It is a poor argument to say the legislature had the constitutional power to inflict this injury upon particular individuals, and that it has happened in many other cases where private property was taken for public use.   The question is, was such the design of the law making power in the present case?   It is believed not.   It is due to the legislative wisdom of the state, to impute to it a design in accordance with general principles of justice and equity ; and such a design is consistent only with the limiting of the benefits, to be set off against damages, to such special advantages as each proprietor shall be found to have derived from the making of the road across his land.   Looking at the entire clause of the charter, I think we must arrive by construction at the same conclusion.   We must hold that the phrase, " the construction of the road," as there used, does not mean the completion of the whole work, but the construction of that particular portion which occupied the appellant's land.   The benefits were to be deducted from the damages.   In estimating damages, the jury were expressly limited to such as resulted from the taking of the appellant's land, and it is but reasonable to suppose that general benefits were not to be offset against special damages. In every view of the case, the charge of the circuit judge upon this point must be held correct.   But again : it is claimed that the court erred as to the rule of damages and valuation.   If it is intended that a separate and distinct valuation of the land was not required, then clear and definite language thrice repeated is without force and effect.

Beyond a question, the jury were first to estimate and determine the value of the land taken and then further, the damages which the owner might sustain by the taking of the same."   And to preserve the constitutional rights of the indi-

The Milwaukee & Mississippi Railroad Company vs. Eble.

vidual to compensation for his property thus taken for public use, the company were required to pay such value in full without deducting therefrom any portion of the benefits estimated or calculated to be likely to flow to him, from the construction of the road. This construction alone is consistent with the requirements of the constitution, and with the spirit and letter of the company's charter.

3. The third and fourth assignments of error will be considered together. (1.) The court erred, in admitting the opinion of witnesses, as to the effect of the construction of the road. (2.) The court erred in not allowing the witness to testify, as to the effect of the stream in leaving a fertilizing deposit.

The appellant proposed the following question: "Can you state any reason why the running of the railroad track through the appellant's farm makes it more or less valuable?" Objection was made, that the witness should state facts, and should not be permitted to assign reasons, or give in evidence mere matters of opinion. This objection was overruled, and the witness permitted to answer the question. The court are referred to 7 Wend., 72, and 1 Chand., 178, 264 (2 Pin., 215, 284), for authorities sustaining this objection. We here have two cases in this court where the opinion of witnesses was asked upon matters of skill, and the questions were held improper because the witnesses were not experts. The case in Wendell is where the questions were held improper, because it "was not a matter of skill or science, so as to justify this species of evidence." The rule is universal, that mere opinion cannot be received except when given by experts, in the proper cases. But this rule must not be so construed as to exclude all the results of reason, judgment and observation on the part of a witness; the answers given by the witness in the present case illustrate the rule. He stated that the land would require more fencing, on account of the railroad; and the fences, if crooked, would cover part; that there is a waste with any fence; a part of the way along the railroad line the fence would float

The Milwaukee & Mississippi Railroad Company vs. Eble.

off; thinks about three-eighths of the way; a post and board fence would be most secure; the materials or wood would cost from fifty to sixty cents for every twelve feet; the putting up would cost ten cents per rod." Now, these are all legitimate reasons why the location of the railroad on the appellant's farm would make it less valuable. They are not statements strictly of existing facts, but of facts blended with the deduction of common sense and observation applied to the matter in question; and hence they are not mere matters of opinion. The jury were to find whether the appellant's farm had or had not received damage; and, if any, how much? They were to to make up an opinion founded on the evidence. This evidence was the best, in the nature of things, which could be had. It was well adapted to shed light on the subject, and enable the jury to form a correct opinion; and hence it was competent and proper, and was properly allowed.

The other objection arises upon a question put by the appellees, and excluded by the court. In the bill of exceptions it is thus stated: "Charles Hart, being called in behalf of the defendant below, testified that he was acquainted with the land, and the flow of the stream spoken of. Whereupon the counsel for the plaintiff in error put the following question to the witness: 'Would the flowing of the water upon the land, and its being stopped by the railroad, have a tendency to convey the alluvium and to enrich the land?' To which question the defendant in error objected. The objection was sustained," etc. A majority of the court think the judge below erred in supposing this question called for a mere opinion, and hold that the answer of the witness was admissible under the rule already laid down. Yielding to their better judgment, I have concurred in the result, which is, that the judgment of the circuit court must, for this error, be reversed with costs.

Judgment reversed.

NOTE. — A railway company cannot enter upon and permanently occupy land owned by a private person without first having had the compensation

to be paid therefor ascertained by some legal proceeding and tendered to the owner. *Shepardson v. Mil. & Bel. R. R. Co.*, 6 Wis., 605; *Robbins v. Mil. & Hor. R. R. Co.*, 6 id., 636; *Powers v. Bears*, 12 id., 213; *Loop v. Chamberlain*, 20 id., 135; *Bohlman v. Green Bay & Lake Pepin R'y Co.*, 30 id., 105.

The mode prescribed in the charter is the only one to be pursued. *Pettibone v. La Crosse & Mil. R. R. Co.*, 14 Wis., 443; *Ford v. Chicago & N. W. R. R. Co.*, id., 609. See *Davis v. La Crosse & Mil. R. R. Co.*, 12 id., 16.

Principles upon which compensation is to be ascertained, and for what deductions may be made from damages, as benefits. See *Robbins v. Mil. & Hor. R. R. Co.*, 6 Wis., 636; *Bigelow v. West Wisconsin R'y Co.*, 27 id., 478; *Welch v. Mil. & St. Paul R'y Co.*, id., 108; *Thompson v. Mil. & St. Paul R'y Co.*, id., 93; *Price v. Mil. & St. Paul R'y Co.*, id., 98.

Title to lands taken vest, when the amount of compensation to be paid has been ascertained, in the mode prescribed by the charter, and the amount has been paid or tendered. No deed is necessary. *La Crosse & Mil. R. R. Co. v. Seeger*, 4 Wis., 268.

The necessity of taking land for the purposes of its track, and the question whether one strip shall be taken rather than another, are not judicial questions, but are committed entirely to the discretion of the company. *Ford v. Chicago & N. W. R'y Co.*, 14 Wis., 609.