## LUNING v. THE STATE.

1. EVIDENCE—EXPERTS.—The opinions of witnesses, which do not relate to matters of science, art or skill in some particular matter or department of business, are not admissible in evidence.
1. SAME.—An expert, who had heard all the evidence given in a cause, cannot be allowed to give an opinion as to the effect of such evidence, that question involving matters of credibility, etc., which would be usurping the prerogative of the jury; but he may be allowed to state his opinion on an hypothetical case.
3. ARGUMENT—READING OF BOOKS AS TO MATTERS OF SCIENCE.—Medical or scientific works may be read by counsel to the jury, within the discretion of the court. The reading of them may be prohibited by the court, and they cannot be regarded as having any weight or authority, except as the opinions of learned and scientific men.
4. MILL-DAM LAW—NUISANCE.—The right given by the general mill-dam law, to erect a mill-dam and flow the lands of others, is no defense to an indictment, if the dam created a *public* nuisance.

(1 *Chand.* 178.)

ERROR to the Circuit Court for *Dodge* County.

The plaintiff in error was indicted in the Washington county circuit court for erecting and keeping up a mill-dam at or near the village of Cedarburg, on a stream passing through that village, by means whereof the health of the citizens of that village and vicinity was injured, and from which arose unpleasant and unwholesome vapors, and on account of which the inhabitants of that vicinity were made sick and diseased. A change of venue was afterwards had to *Dodge* county.

On the trial, the counsel for the plaintiff in error took exceptions to the ruling of the judge, touching the admission and exclusion of testimony on either side, and the reading of standard medical books, and also as to the instructions of the judge to the jury; the material points of which exceptions are as follows:

Various witnesses, sworn on the part of the state, and in support of the indictment, were asked by the prosecutor the following question: "What effect has the overflowing of that land had upon the public health in that vicinity?"

This question was objected to by the counsel of the plaintiff in error, upon the ground that the witnesses were not, and did not claim to be, scientific men, or possessed of any peculiar skill to divine the effect produced upon the health of the inhabitants of the vicinity by the raising of the water and the flowing the land beyond the natural boundary of the stream ; or, in other words, were not, and did not claim to be, *experts*.

The judge overruled the objections, and allowed the wit-· nesses to give their opinions, upon the principle that they were residents in the vicinity, and had previously testified as to the health of the resident inhabitants, both before and after the erection of the dam, and had stated that an offensive effluvia was produced by the spreading of the water over a much larger tract of land than was covered by the stream in its natural state.

On the defense, the plaintiff in error introduced Dr. Whitney, a practicing physician, as a witness, who had heard all the evidence on the part of the state, touching the sickness that was claimed to be the result of the raising the dam.    The following question was propounded to him by the counsel for the plaintiff in error :    "You state you have heard all the evidence given on this trial ; now, from that evidence, did *Luning's* mill pond, in your opinion, cause the sickness spoken of by the witnesses ? "

This question was objected to by the counsel for the state, on the ground that if the witness answered the question, it could only amount to his own construction of the facts testified to by others, and which would devolve upon him the necessity of reconciling the conflicting evidence given by others, or of placing upon it a construction suited to his own views and conception of such evidence.    The judge sustained the objection, and the counsel for the plaintiff in error excepted.

The counsel of the plaintiff in error, on the trial, offered to read to the jury standard medical works as evidence, or by way of instruction to the jury, as to the engendering, presence

and effect of *malaria* upon the health of those who live in the vicinity.

The counsel for the state objected to the reading of such books, and the judge sustained the objection.

The counsel for the plaintiff in error requested the judge to charge the jury, that the mill-dam in question, having been erected under and in virtue of the provisions of the statute of the state, providing for and regulating the construction of such works, no indictment could be sustained in the name of the state, for a nuisance which might be created thereby, until the court should have pronounced such law unconstitutional. The judge refused so to charge the jury, and the counsel took an exception thereto.

A motion in arrest of judgment was made by the counsel for the plaintiff in error, on the argument before this court, which was based upon the face of the indictment brought up by the writ of error.   The indictment did not, it was claimed, purport to be in the name of the state of Wisconsin.   That question will be found to have been disposed of by the court in the case of the *State v. Delue, ante.*

The jury found the plaintiff in error guilty.

*Holliday,* for plaintiff in error, insisted and argued that a witness, not an expert, may testify to facts within his knowledge, but cannot give an opinion where art and science, which he does not profess to possess, are required (4 Cow. 355 ; 17 Wend. 136) ; that a professional or scientific witness may give an opinion upon the facts testified to by other witnesses, who are not professional or scientific in the matters to which such facts relate (Roscoe's Crim. Ev. 180 ; 1 Greenl. Ev., § 440 ; 5 Hill, 603) ; that the right to erect a mill-dam, acquired under the statute of this state while such law is in force, will protect the party raising such dam, against an indictment on the ground that it is a nuisance ; that it is the right of counsel to read medical or scientific books to the jury, on the trial of causes in which skill and science are involved (Beck's Medical Jurispru-

dence, 659 ; Grey's id. 11) ; that the counsel, in summing up his case, has the right to read from`any book he pleases, and adopt what he reads as a part of his argument.

*J. S. Brown*, Attorney-General, and *A. D. Smith*, on the part of the state, contended, that when a witness, not an expert, gives evidence by stating facts, he may also give his opinion upon such facts (Roscoe's Ev. 179 ; 1 Cowen & Hill's Notes, 759, note 529 ; Phillip's Ev., by Cowen & Hill, 290) ; that there is a distinction between the testimony of an expert, who gives his opinion upon facts stated by a witness not an expert, and that of an expert who assumes to testify upon a case hypothetically stated to him (1 Greenl. Ev., § 440 ; 1 Vt. 497 ; 3 Dana, 382) ; that the evidence given by the witness of the nauseous scum, collected upon the surface of the water in the mill-pond—the pungent stench arising therefrom—the former good health of the inhabitants—and, since the erection, the universal bad health of all who live in the vicinity, enables a witness to give his opinion, upon the facts he has stated, as to the effect produced upon health ; that the reading of scientific books in evidence, which rest merely upon the reputation of the author, are not admissible, because they have no sanction in law to make them competent. The author of any or all of such books, might, as an expert, give oral evidence ; and other witnesses, experts also, might do the same, adopting as their own, the reasoning and opinions of authors, though not present ; that counsel might argue to the jury in accordance with what had been written by others, and the jury might adopt the opinions of the counsel, which were the mere reflections of the thoughts of the author, but the book cannot be read to the jury as matter of evidence.

LARRABEE, J.   This case is brought to this court by a writ of error to the Dodge county circuit court.   The plaintiff in error was indicted for erecting and maintaining a mill-dam, which caused the water to overflow a large tract of heavily

timbered land, in the immediate vicinity of the village of Cedarburg, in Washington county, and which was alleged created unpleasant and unwholesome vapors and sickness to the inhabitants of that village. Many witnesses residing in the village were called by the counsel for the state to prove the situation of the mill-pond, the effect of the stagnant water upon standing and fallen timber, and the prevalence of intermittent fevers to an extraordinary extent subsequent to the erection of the dam.

After stating the facts, the question was asked, and the reply of the witnesses permitted to go to the jury: "What effect has the overflowing of that land had upon the public health in that vicinity?" This is the first assignment of error, and on the ground that the opinions of these witnesses, not being *experts*, was incompetent as testimony. The general rule that the opinions of witnesses are confined to men of science, art or skill in some particular branch of business, is well settled, and was admitted by the counsel for both parties.

But it was contended by the counsel seeking to introduce this as testimony, that the witnesses, having detailed the facts, were properly allowed to state their opinion in connection with them; that they were, from their position and means of information, *experts* for that particular purpose. They were inhabitants of the village; had lived there before the erection of the dam, and afterwards; had observed the general good health before, and the universal sickness after—there being not enough in health to minister to the necessities of the sick; that the stench from the dam was intolerable, compelling the closing of the doors and windows, and the resort to other expedients to remove its influence. It was upon this ground that I considered this an exception to the general rule, and permitted the evidence to go to the jury. But I am satisfied, upon further examination, and concur in opinion with the other members of the court, that the evidence introduced was not within the general rule; and though, perhaps, in this case

operating unreasonably, yet the rule should have been strictly applied. For this error a new trial must be had.

Another ground of error assigned is, that the witness Whitney, being a medical man, was not allowed to answer the following question : " You state you heard all the evidence given on this trial ; now, from that evidence, did *Luning's* mill-pond, in your opinion, cause the sickness spoken of by the witnesses ? " In this the ruling was correct. The answer to this question would have been an opinion as to the general merits of the cause, the weighing of conflicting testimony, and swearing to a legal conclusion ; in fact, usurping the province of the jury. The facts, as given in evidence, might have been stated to the witness, and then his opinion upon them would have been competent ; or he might have given his opinion upon a similar case, hypothetically stated.

The next ground of error to be noticed is the refusal to permit the counsel for the defendant below to read from medical books. This is a matter generally within the discretion of the court, and therefore not the subject of a writ of error. In many cases, no doubt, it would be proper to allow books of science to be read, though generally such a practice would lead to evil results. But certainly counsel have no right to read indiscriminately what books they may choose, as is contended by the counsel for the plaintiff in error. The latitude to be given to counsel in argument is always under the control and in the discretion of the court.

The other assignments of error to be noticed are in the charge to the jury, and upon the motion in arrest of judgment. The counsel for the defendant below asked the judge to charge that, as the dam in question was erected under the act of the territorial assembly authorizing the construction of mill-dams across streams not navigable, no indictment could be sustained by the state for a public nuisance created by such dam. Though that act has been decided by this court, in the case of *Newcomb v. Smith, ante*, to be valid, yet it cannot be con-

ceived that by erecting a dam in accordance with its provisions, license is thereby given to create and continue a nuisance. Such a construction of the power given in that act, to owners of mill property, would be utterly inconsistent with the right of every citizen to call in the authority of the state for protection against the unlawful encroachments of others.

How far soever the privileges given to mill owners may be held to extend, most certainly no such immunity as is here claimed exists. The right is given to any person to build a dam, and flow the water upon the lands of others; but if he thereby creates a public nuisance, he is as liable to an indictment in that regard as if no such statute were in existence. 1 Marsh. (Ky.) 535; *Taylor v. Major*, id. 552.

This is the only point in the charge given to the jury that it is necessary to examine, and this, as well as the rest of the charge, was correct. One of the grounds on which the motion in arrest was founded, is, that it does not appear that the indictment was found in the name and by the authority of the state. This point is settled by this court in the case of the *State v. Delue*, ante.

Judgment reversed.