QUINN, Respondent, vs. HIGGINS, Appellant.

*September 4 — September 22, 1885.*

*Malpractice in surgery: Expert testimony: Hypothetical questions: Instructions to jury.*

1. In an action for malpractice in surgery the defendant is entitled to show by expert witnesses that the treatment he gave the plaintiff was such as a surgeon of ordinary knowledge and skill would and ought to have given.

2. Where the malpractice complained of was in the treatment of a broken leg, and an expert had testified (by deposition) on behalf of the plaintiff that the bones had united by a ligamentous connection instead of the ordinary bony union, it was error to exclude the question asked on cross-examination: " Non-union may take place in cases of the best treatment sometimes? " and the answer thereto: " Most certainly, and produce a condition similar to the one found in [plaintiff]."

3. In propounding a hypothetical question to an expert, a party may assume as proved all the facts which the evidence tends to prove, and the court should not reject the question on the ground·that in his opinion such facts are not established by a preponderance of the evidence.

4. If a hypothetical question fails to assume all the facts essential to the formation of a proper opinion on the case, the effect of the testimony based thereon is much weakened if not entirely destroyed; and the jury may be so instructed.

5. It is not error to refuse to give a special instruction asked upon a point fully and fairly covered by the general charge.

APPEAL from the Circuit Court for *Columbia* County. The case is sufficiently stated in the opinion.

For the appellant there was a brief by *Silverthorn, Hurley & Ryan,* and oral argument by *Mr. Silverthorn.* They argued, *inter alia,* that it was error (3, 4) to exclude the hypothetical questions put to Dr. Garry on his cross-examination, assuming facts which the defendant claimed had been shown by plaintiff's own testimony. Rogers on Exp. Test. secs. 28, 32; *Leopold v. Van Kirk,* 29 Wis. 548. It was error (8, 9) to exclude hypothetical questions put to Dr. Jenkins, embodying the facts in the case claimed by the defendant to be shown by the evidence, and assuming them to be true for the purposes of the question. *Wright v. Hardy,* 22 Wis. 348; *Bennett v. State,* 57 id. 69; Rogers on Exp. Test. secs. 25, 26. It was error (12) to refuse to give the following instruction to the jury, asked by the defendant: "If you find that the defendant exercised a slight want of ordinary care in the treatment and care of the broken limb, by himself or his servants, in consequence of which he sustained the injury complained of, or which contributed thereto, then he cannot recover." *Montgomery v. Scott,* 34 Wis. 338; *Ditberner v. C., M. & St. P. R. Co.* 47 id. 138; *Griffin v. Willow,* 43 id. 509; *Dreher v. Fitchburg,* 22 id. 675; *Geiselman v. Scott,* 25 Ohio St. 86.

For the respondent there was a brief by *Bardeen & Mylrea,* and oral argument by *Mr. Bardeen.*

TAYLOR, J. This is an action brought by the respondent to recover damages of the defendant for malpractice as a surgeon in setting and caring for a broken leg of the respondent. On the trial in the circuit court the respondent recovered over $1,600 damages. Judgment was entered upon such verdict, and the defendant appealed to this court.

A motion for a new trial was made in the court below, and denied. One of the grounds of such motion was that the verdict was unsupported by the evidence. The denial of the motion on that ground is assigned as one of the

errors relied upon by the appellant in this court. This point was pressed upon this court by the learned counsel for the appellant, in his oral argument, and the opinion of this court was asked by the learned counsel upon that point. As we have come to the conclusion that the judgment in this case must be reversed for errors occurring on the trial in the exclusion of evidence offered by the appellant, and as it is probable that there will be a new trial of the case, we do not feel called upon to pass upon the whole merits of the case, as requested by the learned counsel for the appellant.

The question of negligence and carelessness on the part of the surgeon in the treatment he gave the plaintiff's leg, while it is one which the jury must necessarily determine upon the whole evidence in the case, is still a question which must be determined mainly upon expert evidence. Certainly the claimed misconduct of the surgeon is not so flagrant that a man entirely ignorant of surgery can form an intelligent judgment as to the propriety or impropriety of the treatment given by the defendant, unaided by evidence of men skilled in surgery and having superior knowledge as to what treatment should have been given to the broken leg under all the circumstances. The defendant was therefore entitled to show, if he could, by witnesses having superior knowledge and skill in surgery, that the treatment he gave the plaintiff's leg was such as a surgeon of ordinary knowledge and skill in his profession would and ought to have given. The exclusion of any material evidence of the expert witnesses offered by the defendant which had a direct tendency to show that his treatment was proper, and such as a surgeon of ordinary learning and skill in his profession would have adopted in the case, must necessarily prejudice the defendant.

The complaint made by the plaintiff was that the defendant had so carelessly and negligently treated and cared for his broken limb that the bones had not united at the frac-

ture in the ordinary way by the usual bony substance, but that they were "held together by a fibrous ligament, or connective tissue, forming a false joint at the seat of fracture," and that the leg was in this condition long after the time had elapsed when fractures of that kind ordinarily, with proper treatment, would have been firmly joined with a bony substance. The fact that this was the condition of the bones of the plaintiff's leg a considerable length of time after the bone would in ordinary cases have been healed under proper treatment, was relied upon as evidence of improper treatment more than any positive proofs showing that the actual treatment given by the defendant was faulty, careless, and improper. Among the other evidence given by the respondent, the deposition of Dr. Senn, of Milwaukee, who appears to be a skilful and learned surgeon, was read in evidence, and in his testimony the doctor describes the condition of the leg when he was called to prescribe for the plaintiff, and he states that this ligamentous connection had taken place at the place of fracture, making the false joint, when he first examined the leg. On the cross-examination the defendant questioned the witness as to the causes which might result in this ligamentous union instead of the usual bony union; and for the purpose of showing, if he could, that the ligamentous union was not in all cases the result of bad treatment on the part of the attending surgeon, or other attendants, or even improper conduct on the part of the patient himself, he propounded this question: "Non-union in compound fractures may take place in cases of the best treatment, sometimes?" This question was objected to by the plaintiff, and the objection was sustained by the court. The answer given to it, and found in the deposition, was not permitted to be read to the jury. The answer was as follows: "Most certainly; not only in compound, but in simple fractures, and produce a condition similar to the one found in *Mr. Quinn*." The objection to the

question was "that it was leading, and not proper cross-examination."

We are very clear that the objection should have been overruled. The witness had testified as to the condition of the leg when he first saw and examined it. The condition in which he described the limb was undoubtedly shown on the part of the plaintiff as tending to show improper treatment on the part of the defendant, and it seems to us very clear that the defendant had the right on the cross-examination of the witness to disprove the inference of negligence on his part sought to be drawn from its condition, by showing that such condition might, and often did, result from causes other than negligence on the part of the attending surgeon, and that it did often result under the best of care. The evidence was certainly competent either as direct or cross-examination, especially in a case of the kind at bar, when there is little if any evidence fixing any particular acts of want of care or negligence on the part of the defendant.

The propriety and force of the evidence sought by the defendant from this witness is made apparent from the fact that the plaintiff had examined other medical experts upon that point, and they had testified without any qualification that if the patient was of ordinary health, and the fracture had been properly set, there ought to be a good union in thirty-eight days, so that the patient could lift his limb. There was no suggestion in the evidence of the other expert witness on the part of the plaintiff that a ligamentous union would result from any other cause than careless setting of the bone, or negligent attendance thereafter. It was proper and important for the defendant, therefore, to show, if he could, that such ligamentous union would be the result of other causes than the want of proper care and attendance on the part of the surgeon.

A similar question was asked Dr. Meacher, a witness for

the defendant. The doctor had stated that in some cases of fracture union never takes place. This question was then asked by the defendant: "Even under proper treatment?" It was objected to by the plaintiff, and the court sustained the objection. We think the court should have allowed the witness to answer this question, for the reason above stated.

It is also assigned as error by the counsel for the appellant that the court refused to allow the expert witnesses to answer certain hypothetical questions proposed by the defendant on the trial. As to the propriety of allowing expert witnesses to give an opinion upon a hypothetical case stated, the practice has frequently been approved by this and other courts. See *Luning v. State*, 2 Pin. 215, 220; *Wright v. Hardy*, 22 Wis. 339; *Bennett v. State*, 57 Wis. 69; *Hunt v. Lowell G. L. Co.* 8 Allen, 169; *Kempsey v. McGinniss*, 21 Mich. 123; *Woodbury v. Obear*, 7 Gray, 467. And it is clearly a more appropriate way than to allow the expert witness who may have heard the evidence in the case to give his opinion upon his understanding of the evidence so given.

The reason for permitting hypothetical questions to be propounded to an expert witness, rather than to allow him to give his opinion from hearing the evidence given in court and basing an opinion upon that, was stated by this court in *Bennett v. State*, 57 Wis. 85, 86. The reasons are stated as follows: "It is almost impossible that all the testimony given in the case, coming from many witnesses and elicited by a long examination, should be entirely uncontradictory, or should be so plain that different inferences would not be drawn by different men. And to permit an expert to give his opinion, which is to go to the jury as competent evidence, upon such a mass of testimony, without any explanation as to what state of facts such an opinion is based upon, is, in effect, taking the case from the jury and deciding it upon the understanding of the witnesses as to what facts the

evidence in the case established.   We think the better rule is that the jury should be clearly informed of the exact state of facts upon which the expert bases his opinion, and they certainly are not so informed when he gives his opinion upon his recollection and understanding of the whole evidence in the case; and this is especially so where the evidence is voluminous, is elicited from a large number of witnesses, and is not entirely harmonious and uncontradictory.   The jury should in every case distinctly understand what are the exact facts upon which the expert bases his opinion.   This is, perhaps, better accomplished by limiting him to answering hypothetical questions, and if it be proper, in any case, to permit an expert who has heard the testimony of a particular witness or of all the witnesses to give his opinion upon such evidence, and there be any conflict of evidence or any doubt as to what the evidence is, he should be required to state fully his understanding as to what facts are established by such testimony."

It does not appear very clearly, from the record in the case at bar, upon what grounds the learned circuit judge held that the questions propounded by the appellant to the expert witnesses were incompetent or objectionable; but it seems probable, from certain intimations made by the learned judge, that the questions were objectionable because they were not based upon the facts as proved by the testimony.   So far as we are able to ascertain from the record, this objection does not apply to several of the questions rejected.   It may be true that the court ought not to allow hypothetical questions to be propounded to an expert witness which are plainly outside of the case and based upon a statement of facts as to which there is no pretense that they are proved by the evidence in the case.   The rule in that respect must be that, in propounding a hypothetical question to the expert, the party may assume as proved all facts which the evidence in the case tends to prove, and the

court ought not to reject the question on the ground that, in his opinion, such facts are not established by the preponderance of the evidence. What facts are proved in the case, when there is evidence tending to prove them, is a question for the jury and not for the court. The party has the right to the opinion of the expert witness on the facts which he claims to be the facts of the case, if there be evidence in the case tending to establish such claimed facts, and the trial judge ought not to reject the question because he may think such facts are not sufficiently established.

Under this rule we think the court erred in sustaining the objection of the plaintiff to the questions propounded to Dr. Garry, a witness for the plaintiff, on his cross-examination, set out in the third and fourth assignments of error by the counsel for the appellant in their printed brief; also in sustaining the objection to the questions propounded to the witness Dr. Jenkins referred to in the eighth and ninth assignments of error in the brief of the counsel for appellant.

The appellant also alleges as error the refusal of the court to instruct the jury as requested, and which instruction is the appellant's twelfth assignment of error. We think the court, in the general charge, submitted the question of the plaintiff's contributory negligence quite fully and fairly to the jury, and that there was no error, therefore, in refusing to give the instruction asked.

The charge of the court seems to us to have left the questions in the case, as a whole, fully and fairly to the jury, and is not subject to just criticism, unless it be the remark made as to hypothetical questions. The court having refused to permit most of the hypothetical questions propounded by the defendant to the expert witnesses to be answered, presumably on the ground that they failed to cover essentially all the facts necessary to a proper opinion upon the case, it is claimed by the counsel for the appellant that the court was not called upon to state to the jury that

Quinn vs. Higgins.

if a hypothetical question failed to cover all such facts "the testimony based upon it is very much weakened, if not entirely destroyed and of no effect." This statement of the learned judge is undoubtedly correct as a legal proposition; but, notwithstanding some of the questions were excluded, other hypothetical questions were admitted and answered, to which this remark might properly be applicable. We cannot say, therefore, that it was made wholly outside of the facts in the case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.