## CAMACHO, RESPONDENT, v. BALASQUIDE, APPELLANT.

### APPEAL from the District Court of San Juan, Section 2.

#### No. 836.—Decided May 29, 1913.

APPEAL—IMMATERIAL ERRORS.—Errors which do not influence the decision of the case or are favorable to the appellant will not justify a reversal of the judgment rendered.

ID.—FINDINGS AND CONCLUSIONS OF TRIAL COURT—UNIMPORTANT ERRORS.—The findings and conclusions of the trial court cannot be considered on appeal as insufficient by reason of slight and inadvertent errors such as the mention of an erroneous date.

ID.—FINDINGS OF FACT—CONFLICTING EVIDENCE.—Where the evidence is conflicting the findings of fact of the trial court will not be disturbed on appeal except where partiality, passion, prejudice or manifest error is shown.

ID.—FINDINGS OF FACT—EVIDENCE.—It is essential to the sufficiency of findings of fact that they be sustained by the evidence, but where there is any competent evidence to support them they will not be reversed on the ground of insufficiency, nor even where they are totally insufficient when the error is not prejudicial.

EVIDENCE—RECORDS—PRIMA FACIE EVIDENCE—CERTIFICATE OF BIRTH—DATE OF BIRTH.—A certificate of brith issued by the official in charge of the civil registry is *prima facie* evidence of the date of the birth of the person referred to, but, in accordance with section 11 of the Law of Evidence, it may be contradicted when it is shown by oral evidence establishing the correct date of the birth that the date in the certificate is erroneous.

ID.—LEADING QUESTIONS—DISCRETION OF COURT.—It is permissible at the discretion of the court to propound leading questions to witnesses, and when the case is being tried before a court without a jury the admission of such questions could not well be deemed prejudicial.

ID.—ANTE-MORTEM ADMISSIONS.—The mere fact of the death of a person is not sufficient alone to lay a predicate for allowing the testimony of witnesses regarding *ante-mortem* admissions made by the deceased.

ID.—NATURAL CHILDREN.—When, as in the present case, the natural child who brings the action was born in 1908, the refusal to admit in evidence a certificate of birth showing that another child was born to the mother of the plaintiff in 1904 does not constitute an error prejudicial to the defendant.

ID.—EXPERT WITNESSES—HYPOTHETICAL QUESTIONS.—Great discretion is allowed the trial judge in the examination of expert witnesses and while as a general rule hypothetical questions must be founded upon facts established during the trial, it is not necessary that all the facts should be clearly proven or that the exact language of witnesses should be followed.

ID.—REPUTATION OF WITNESS.—In order to attack the reputation of a witness it

is sufficient to give evidence in general terms and it is improper to prove specific acts reflecting on the character of the witness.

D.—EXPERT TESTIMONY—EXCLUSION OF TESTIMONY—DISCRETION OF COURT.— The court in the exercise of its discretionary power may exclude the testimony of an expert witness and such ruling will not be reversed unless it is shown that the court abused its discretion.

ID.—REPUTATION OF WITNESS—IMPEACHMENT OF WITNESS.—When it is sought to impeach the integrity and veracity of a witness it is not permissible to introduce evidence tending to show specific acts of her prostitution or immorality, but the evidence shall be confined in general terms to her reputation for truth and veracity in the neighborhood in which she lives.

ID.—Considering the circumstances of this case it was held to be immaterial to its decision to determine the color of the mother.

OPINION OF THE TRIAL COURT.—Section 227 of the Code of Civil Procedure, as amended by the Act of March 9, 1911, provides that the trial judge shall prepare and file a brief statement containing the findings of fact and the reasons for his decision, an elaborate opinion being optional and not necessary.

The facts are stated in the opinion.

Messrs. *Francis H. Dexter, Herminio Díaz* and *Cay. Coll Cuchi* for respondent.

Messrs. *Juan de Guzmán Benítez* and *José de Guzmán Benítez* for appellant.

MR. JUSTICE MACLEARY delivered the opinion of the court.

On January 30, 1911, an amended complaint was filed herein in the District Court of San Juan, by which the minor, Enrique Camacho, represented by his mother and defender, Martina Camacho, maintained an action against Antonio Balasquide Gómez, brother of Ramón Balasquide Gómez, asking that he, the said Enrique Camacho, be declared to be the natural and acknowledged son of Ramón Balasquide Gómez and his sole heir, in default of a last will and testament.

He bases his suit on the following grounds:

*First.*—That Ramón Balasquide Gómez and Martina Camacho, both unmarried, publicly and openly maintained and displayed illicit relations with each other for a period extending over two years.

*Second.*—That during such illicit relations and as a result thereof, the plaintiff, Enrique Camacho, was generated and born on August 14, 1908, there having been, neither at the time of such procreation or birth, nor before nor after, nor

at any time, any impediment to prevent the marriage of the father and mother of the child.

*Third.*—That during the pregnancy of the mother of the plaintiff the said Ramón Balasquide Gómez maintained her in a house the rent of which, together with the cost of her subsistence, he duly paid.

*Fourth.*—That on the birth of the plaintiff Ramón Balasquide Gómez acknowledged him to be his natural son and admitted and declared him so to be to various persons; that from the time of the birth of the said plaintiff up to the death of Ramón Balasquide the latter met all the requirements of the child and of the mother, paying their expenses, purchasing clothes and food for them, and acting in a general and unequivocal manner as the father of the said child, bestowing upon him the care and attention of a father and preserving such relations up to the time of his (Ramón Balasquide's) death.

*Fifth.*—That on March 13, 1910, the said father, Ramón Balasquide Gómez, died unmarried and intestate, leaving no legitimate heirs in the ascending or descending line and no natural descendant other than the plaintiff.

*Sixth.*—That subsequently the defendant herein, Antonio Balasquide Gómez, brother of Ramón Balasquide Gómez, was, in *ex parte* proceedings, declared by the District Court of San Juan, to be the *ab intestato* heir of the latter without prejudice to the superior rights of any third party.

The defendant filed his answer in opposition to the complaint, and denied that Martina Camacho was single or that she had engaged in concubinage with Ramón Balasquide Gómez in a glaringly open and public manner, or that as a result thereof the plaintiff herein was procreated and born on August 14, 1908; or that Ramón Balasquide had kept or visited Martina Camacho, paying her house rent and living expenses, and that he made admissions and statements declaring the plaintiff to be his son, supplying his necessities and fulfilling the duties of a father toward him; and, further, denied that

any such state of relations existed between the plaintiff and Balasquide up to the time of the latter's death. The defendant further alleged in his answer as new matter that Martina Camacho had divers children as the result of her illicit relations with sundry persons, none of whom was Ramón Balasquide Gómez; that she was engaged in domestic service at several houses and had no home of her own, being in the habit of going on the streets, by night and by day, to follow up her illicit relations; that Ramón Balasquide Gómez had made statements to the effect that he had no children, and that, with the exception of his brother, he had no one to whom he could leave his property at his death in the event of his demise.

The trial of the case took place before Hon. Charles E. Foote, district judge, beginning on July 14, 1911, and continued for several consecutive days thereafter. Both parties were represented by their respective attorneys and evidence was offered by each side, a part thereof being admitted for the consideration of the court and several exceptions being taken to the exclusion of the portion rejected as well as to certain of the other rulings made by the court, all of which appears from the statement of the case forming part of the record in this action, which is found in the record.

On August 9, 1911, the court rendered its judgment in this case holding that the facts and the law were in favor of the plaintiff and against the defendant, and declaring the plaintiff, Enrique Camacho, to be the natural and recognized son and sole and universal heir of Ramón Balasquide Gómez, as the fruit of the latter's connection with Martina Camacho, and assigning to the said Enrique Camacho all the rights and obligations attaching to his condition as the natural recognized child and universal heir of Ramón Balasquide Gómez, also adjudging costs against the defendant. Notice of this judgment was duly served on defendant on August 15, 1911, as required by the statute.

After the trial the court prepared its findings of fact and

conclusions of law in this case, making a statement of such matters as it considered to be proved and setting out certain legal conclusions by virtue of which the plaintiff, in accordance with the Civil Code of 1902 and the jurisprudence of this Island, was adjudged to be the natural and recognized child of Ramón Balasquide and the sole heir to his estate. The defendant took an appeal from the judgment rendered against him, under advice of counsel, and has submitted to this Supreme Court the transcript of the record, in due course, properly certified to by the respective attorneys of the several parties.

The findings of fact and conclusions of law reached by the trial court read substantially as follows:

### FINDINGS OF FACT.

1st. That Ramón Balasquide Góméz was white, of age, single, and a resident of San Juan; and that Martina Camacho is white, of age, unmarried, of domestic occupation and also a resident of San Juan.

2d. That on the night of August 14, 1908, Martina Camacho gave birth to a white child, to whom the name of Enrique was given, said child being the plaintiff herein.

3d. That for a year or more, up to the birth of the child Enrique, Ramón Balasquide Gómez maintained illicit relations with Martina Camacho and these relations had begun while she was living as a servant in the house of said Ramón Balasquide Gómez.

4th. That while Ramón Balasquide Gómez was holding said illicit relations with Martina Camacho, when she was living at the house of Balasquide as a servant, he had carnal connection with her on several occasions, she thereby becoming pregnant.

5th. That Ramón Balasquide Gómez rented a house in Santurce, San Juan, during her pregnancy, where he took her to live; that during all the period of her pregnancy Balasquide paid the house rent and all other expenses of Martina

Camacho, and during all this time he visited the house on several occasions, and also walked with her through the public places of this city and treated her as his concubine, having also made statements to the effect that he had no suspicions whatever as to her being unfaithful to him, stating, moreover, that he had confidence in her, and that he was very happy to see that he had realized in her his wishes of having a son.

6th. That Ramón Balasquide Gómez was at the house of Martina Camacho at the time of the birth of the child, Enrique, and immediately after it he acknowledged him as his son.

7th. That subsequently to said delivery of Martina Camacho, Ramón Balasquide Gómez paid the compensation of the midwife, who assisted her during the birth, and continued visiting her; that he also paid for everything that was necessary for her subsistence and that of the child, and told his friends that he had a child; and that he considered Martina Camacho as his concubine and the child Enrique as his son until his death on March 13, 1910.

8th. That at the time of the conception and birth of the child, Enrique, no impediment existed between Ramón Balasquide Gómez and Martina Camacho as to contracting marriage.

9th. That Ramón Balasquide Gómez died on March 13, 1910, without making any will or leaving any legitimate ascendants or descendants, nor any other natural descendent than the plaintiff.

10th. That all the allegations of the complaint are true and all the denials and allegations appearing in the answer of the defendant are untrue.

### CONCLUSIONS OF LAW.

1st. That in accordance with the provisions of the Civil Code, as it was approved in March, 1902, the plaintiff, En-

rique Camacho, is the acknowledged natural child of Ramón
Balasquide Gómez.

2d. That Enrique, who is the plaintiff herein, is the sole
heir of Ramón Balasquide Gómez, whose acknowledged nat-
ural child he is; paragraph 1 of section 913 of the Civil Code
being applicable. .

3d. That the plaintiff is also entitled to a judgment in
his favor for those costs which may be approved by the court.

The appellant, through his counsel, sets out in his brief
as the basis of this appeal an assignment of errors, in ac-
cordance with our rules, but dividing them, as they deem best,
into errors of fact and errors of law.

In order to promote facility in discussion of the questions
presented by counsel for appellant we will combine the assign-
ments more properly and number them consecutively from
1 to 22, without, however, making any change in their sub-
stance. They are as follows, to wit:

1. That the court below admitted oral evidence tending
to show the registration of the birth of the child, Enrique
Camacho, in the civil registry, notwithstanding the fact that
there was a certificate as to said birth which was issued by
the proper officer and that it was presented in evidence dur-
ing the trial; the defendant having taken an exception to
this ruling of the court.

2. That oral evidence was admitted by the court tending
to contradict the certainty as to the date of the birth of the
plaintiff, which appears from the certificate of birth of said
plaintiff.

3. That the court below permitted on the trial some lead-
ing questions to be propounded by the plaintiff to his wit-
nesses during the examination-in-chief, all of which appear
and are set forth in the statement of the case; the defendant
having taken an exception to said ruling.

4. That the trial court admitted in evidence two private
documents in reference to bonds, which were signed by Elena
Artuz and Ramón Balasquide without the authenticity of the

signature of Balasquide having been properly identified, in view of the fact that it had been shown that Elena Artuz was not speaking the truth while she was testifying; the defendant having taken an exception to the admission by the court of said evidence.

5. That the court below denied the admission in evidence of the answers to several questions that were propounded by the defendant to some of the witnesses, among whom were Manuel Quevedo Báez and Rafael Diez de Andino, all of which tended to set forth certain statements which were made by Ramón Balasquide, notwithstanding the fact that it was alleged by the defendant that Ramón Balasquide had died; the defendant having taken an exception to said ruling of the court.

6. That the court below refused to admit in evidence a certificate which was issued by the proper officer in the civil registry at Toa Alta containing a literal copy of the birth certificate of a child that Martina Camacho had in 1904, said certificate having been offered in evidence by the defendant to prove a proper allegation which was relevant to this matter and which appears in the answer presented to the complaint; to which ruling the defendant took an exception.

7. That the trial court allowed Dr. B. K. Ashford while he was testifying as an expert witness to make reference to some facts whose existence and certainty had not been established at the trial; to which the defendant took exception.

8. That the court below admitted as evidence of the general reputation of Martina Camacho an answer given in general terms by the plaintiff's witness, Inés Artuz; to which the defendant took an exception.

9. That the court below did not allow the expert witness, Dr. Eliseo Font y Guillot, to testify, his testimony having been presented by the defendant as evidence in rebuttal to contradict the statement made by an expert witness of the plaintiff as to matters regarding his testimony; the defendant having taken an exception.

10. That the court refused to admit in evidence a certificate issued by the Municipal Secretary of San Juan after having made an examination of the clinical book of the Women's Special Hospital showing that Francisca Martínez Ubaldo had been attended in said hospital for chancres and was engaged in prostitution for nearly two years, said certificate having been presented by the defendant to impeach the integrity and veracity of said witness of the plaintiff; to which the defendant took an exception.

11. The court declared that Enrique Camacho was born on August 14, 1908, notwithstanding the fact that the certificate of birth shows that said child was born on September 25, 1909.

12. The court declared that for a year or more before August 14, 1908, which is the date set by the court as to the child's birth, Ramón Balasquide and Martina Camacho held illicit relations which resulted in the birth of Enrique Camacho.

13. The court declared that Balasquide treated Martina Camacho as his concubine, and made remarks to the effect that he had no suspicion whatever as to her being unfaithful to him, and he was glad to see she had realized his wishes of having a child.

14. The court declared, in the tenth finding, that all the allegations of the complaint are true and that the denials and the allegations contained in the answer presented by the defendant are untrue.

15. The court below states in finding No. 1 that Martina Camacho is white.

16. The court says, in finding No. 2, that on the night of August 14, 1908, Martina Camacho gave birth to a child who is the plaintiff in this action.

17. The court says, in finding No. 3, that for a year or over and previously to the birth of the child, Enrique, Ramón Balasquide was holding illicit relations with Martina Camacho, said relations having begun while Martina Camacho was living as a servant at the house of said Ramón Balasquide

Gómez, so that, according to this statement, the relations began on August 14, 1907, or prior to said date.

The court below states, in finding No. 4, that during said illicit relations and while Martina Camacho was staying at the house of Balasquide as servant they had carnal intercourse on several occasions she thereby becoming pregnant.

19. The following facts are stated by the court in finding No. 5, to wit:

"(*a*) That Ramón Balasquide rented a house for Martina Camacho during her pregnancy and she was taken to the same in Santurce.

"(*b*) That during her pregnancy Balasquide paid the house rent and all other expenses.

"(*c*) That he visited the house on several occasions, walked with her through public places in the city, and treated her as his concubine.

"(*d*) That he made some remarks showing that he had no suspicion of her faithfulness, had confidence in her, and was glad to have a child."

20. It is asserted, in the sixth finding of the judgment, that Balasquide was at the house of Martina Camacho at the time of the plaintiff's birth, and immediately acknowledged him as his son.

21. It is averred, in the seventh finding of the judgment, that Balasquide paid the fees of the midwife and continued defraying the expenses incurred by Martina Camacho as his concubine, attending also to the expenses of his son, the plaintiff, until the date of his death.

22. The judgment avers, in the tenth finding, that the allegations contained in the answer are not true, without showing any reason in support of said finding, and therefore violating section 227 of the Code of Civil Procedure, amended in 1911, as to matters of evidence.

This appeal is based, as contended by the appellant in his brief, on the errors of law committed during the trial, to which the defendant excepted, as well as on the errors of law committed in the judgment, and that the evidence is insuf-

ficient to support the judgment, and that the complaint should have been dismissed.

These several alleged errors will be taken up and considered *seriatim,* as far as convenient, in the same order adopted by the appellant, who will be presumed, in this respect, to understand the best method of presenting his case to secure a reversal of the obnoxious judgment.

It is not every error, either of fact or of law, into which the court below may have fallen on the trial which will justify a reversal of the judgment rendered. Such as did not influence the decision of the case, or such as were favorable to the appellant or were otherwise immaterial, may safely be disregarded on appeal. Our object is to arrive at the essential facts of the case and the correct principles of law applicable thereto, and thus to ascertain whether or not the judgment brought before us for review attains substantial justice between the parties and, if so, it must be affirmed otherwise a reversal must follow.

The findings and conclusions of the trial court cannot be considered on appeal as insufficient by reason of slight and inadvertent errors in the recital of facts or statement of legal conclusions, such as the mention of an erroneous date, where no harm results therefrom. *Pearsall* v. *Henry,* 153 Cal., 314; *Field* v. *Burr,* 129 Cal., 44; *Thomas* v. *Jameson,* 77 Cal., 91; 38 Cyc., 1975.

We have heretofore held that findings of fact, as made by the trial court, will not generally be disturbed if they are found to be in accordance with the statement of the case presented in the record, or in case the evidence is conflicting, except where partiality, passion or prejudice is shown to exist or a manifest error appears therein. Where the evidence is conflicting and where the record fails to indicate that any one of the witnesses was unworthy of belief, the findings of the court below on that point must ordinarily be accepted by the appellate court as correct. *Lowande* v. *García,* 12 P. R. R., 290.

It is essential to the sufficiency of findings of fact that they be sustained by the evidence, but where as a matter of law there is any competent evidence to support them the courts of most jurisdictions will not review or disturb them on the ground of insufficiency, nor even though there is a total insufficiency in the findings will they reverse where the error is not prejudicial. *Southern California Ry. Co.* v. *Slauson,* 138 Cal., 342; *Ambrose* v. *Drew,* 139 Cal., 665; *Barry* v. *Beamer,* 96 Pac. Rep., 373; 3 Cyc., 358 *et seq.* These observations are intended to apply to all these assignments of error which we are now about to discuss separately.

(*a*) The first, second, eleventh and sixteenth assignments of error may be discussed together treating as they do of similar matters. The first and second assignments complain of the admission of oral evidence tending to contradict the statements contained in the certificate as to the birth of the plaintiff in regard to the date when the same occurred. The eleventh and sixteenth assignments set out the finding made by the court that plaintiff was born on August 14, 1908, while the certificate shows that he was born on September 25, 1909. The latter is claimed to be the correct date. It is contended by the appellant that the certificate of plaintiff's birth should be accepted as a public document, incontrovertible, and that a finding contrary to its recital must necessarily be incorrect. In our opinion the trial court could entertain other evidence on this point, as it did at the trial, fixing the date of plaintiff's birth according to the most reliable testimony presented for its consideration.

These assignments of error also as stated relate to the admission of oral evidence tending to show the registration of the birth of the child, Enrique Camacho, in the civil registry and to contradict the correctness as to the date of the plaintiff's birth as shown by said certificate. Under our law of evidence such testimony is admissible. It may be further said that the question as to the exact date of the plaintiff's birth is not essential, and that therefore these assignments

are not well founded, and that whatever errors the court may
have committed in regard thereto are immaterial. It may
be observed that Martina Camacho testified under oath that
when she inscribed the birth of the plaintiff on November 2,
1909, that the child was one year and six months old; and
besides that, she testified that the child was not born on Sep-
tember 25, 1909, as set forth in the certificate of inscription
of the civil registry, and it may be further noted that Elena
Artuz was called as a witness to prove that Martina Camacho
gave birth to the plaintiff on August 14, 1908, and that the said
witness confirmed the statement of plaintiff's mother in that
respect, and that the date of nativity was also fixed by the
midwife who assisted at the birth. Taking all this evidence
into consideration, the trial court, in the use of its discretion,
after due consideration, held that the child was born on August
14, 1908. We cannot, therefore, say that any error was com-
mitted in fixing this date.

In regard to section 320 of the Civil Code and the proper
construction to be given thereto, it may be regarded as an
elementary law, and that the legal principle therein involved
is modified by the Law of Evidence. The certificate of inscrip-
tion made in the civil registry in regard to the birth of the
child cannot be considered as an incontrovertible document.
It is evidence, it is true, of its contents, but such evidence is
only *prima facie*. Our law of evidence, in section 71, declares
that entries made in public or other official books or records
by a public officer in the performance of his duty are *prima
facie* evidence of the facts stated therein, and section 11 of
the same law of evidence tells us what *prima facie* evidence
is, and defines it to be that which suffices for the proof of a
particular fact until the same is contradicted and overcome
by other evidence, and gives as an example that the certifi-
cate of a recording officer is *prima facie* evidence of a record,
but it may afterwards be rejected on proof that there is no
such record. Then this certificate, made by the proper offi-
cer, in showing the inscription in the civil registry of the

birth of the child is only *prima facie* evidence and not an indisputable document. Such being the case, the plaintiff could properly offer oral proof to show that the contents of the same were incorrect. This proposition is supported by 2 Wigmore on Evidence, sections 1335 and 1336, and Jones on Evidence, section 511, and the authorities cited in both of these textbooks.

(*b*) In the third assignment of error objection is made that some leading questions propounded by the plaintiff to his witnesses during the examination-in-chief were permitted by the court over the objection of the defendant. It is permissible under some circumstances to propound leading questions to witnesses, and whether or not they should be asked in the progress of the trial, is largely within the discretion of the trial judge. The admission of such questions is less likely to be harmful to any party in a case which is being tried before a court than if the same case were being submitted to a jury, because the court can, even after receiving an answer to the objectionable question, readily exclude it from consideration if found to be improperly admitted. In Porto Rico all civil cases are tried by the court without a jury. It is not shown that the leading questions complained of were harmful to appellant's case; hence this assignment may be disregarded.

(*c*) The fourth error insisted on by the appellant relates to the admission of two private documents said to be bonds signed by Elena Artuz and Ramón Balasquide, in which it is alleged that the authenticity of the signature of Balasquide was not properly verified. The trial judge considered it to be identified by the testimony of Elena Artuz and no sufficient cause is shown to us to change this ruling.

(*d*) The fifth assignment of error relates to the exclusion of testimony of the witnesses, Quevedo Báez and Diez de Andino, offered by defendant, several questions being propounded to them to prove certain statements made to them by Ramón Balasquide. It is contended by the appellant that this testi-

mony was admissible because Balasquide had previously died. Something more than the death of the declarant is necessary to· lay a predicate for the admission of unsworn statements in evidence on a trial such as this. Such a predicate was not laid and the evidence was properly excluded.

(e) The sixth error assigned as· having been committed by the court below relates to the exclusion of a certificate of birth alleged to have been issued by the proper officer and containing a statement showing· that a child had been born to Martina Camacho at Toa Alta in 1904. From the date of the document referred to the refusal of its admission in evidence did not prejudice the rights of the defendant.

(f) The seventh assignment of error relates to the testi- mony of the expert witness, Dr. B. K. Ashford, in which it is alleged that he was permitted to make reference in giving his expert opinion to some facts whose existence and cer- tainty had not been properly established at the trial. The question propounded to the expert witness, Major B. K. Ashford, and the answer thereto, according to the bill of ex- ceptions, were as follows:

"Q. If a person who walks the streets alone, who indulges in pleasures, who attends to his. business, who is immersed in the dis- charge of his duties, and at the same time there is observed a sudden change in his manner of conduct and in his habitual character, by devoting himself to alcohol, in what period of paralysis would such an individual be?

"A. In the first period of his disease."

The objection made to this question was that the existence and truth of the facts set forth in the question had not been proven on the trial. Great discretion is allowed to the trial judge in the examination of experts. 17 Cyc., 244 et seq. and notes. This is especially true in a case tried before the court without a jury, as all civil· cases are tried in Porto Rico. While it is a general rule that hypothetical questions must be founded upon facts based on such evidence as may reason-

ably be held to establish them, it is not necessary that all the facts should be clearly proven or that the exact language of witnesses should be followed. *Int. R. R. Co.* v. *Mills,* (Tex. Civ. App.), 78 S. W. Rep., 11; *Quim* v. *Higgins,* 63 Wis., 664, 24 N. W. Rep., 482, 53 Am. Rep., 305; *Oliver* v. *N. E. St. R. R. Co.,* 170 Mass., 222.

(*g*) The eighth assignment of error relates to evidence showing the general reputation of Martina Camacho, and it is objected that an answer of the witness, Inés Artuz, given in general terms in regard thereto, was improperly admitted in evidence. When the reputation of a witness or of any other person is attacked it is proper to give evidence concerning it in general terms and improper to prove specific acts reflecting on the character of the person assailed. So the course pursued by the court and of which complaint is made is exactly the proper one according to all the established authorities. 40 Cyc., 2543, 2572; *State* v. *Tarleton,* 22 S. E. Rep., 495; 118 N. W. Rep., 706.

(*h*) The ninth assignment of error relates also to expert testimony, and assigns as error the exclusion by the trial court of testimony offered by the defendant from the witness, Dr. Eliseo Font y Guillot. This witness was introduced to rebut statements made by an expert witness offered by the plaintiff. The court thought proper to exclude it and the exclusion was within the legal discretion of the court and will not be reviewed unless that discretion was shown to have been abused. 17 Cyc., 28; *Powers* v. *McKenzie,* 90 Tenn., 167, 182; 16 S. W. Rep., 599; *Fraser* v. *Jennison,* 42 Mich., 206; 3 N. W. Rep., 862.

(*i*) The tenth assignment of error touches the refusal of the trial court to admit in evidence a certificate issued by the Municipal Secretary of San Juan, taken from an examination of the clinical book of the Women's Special Hospital to show that Francisca Martínez Ubaldo had been an inmate of the said hospital and was a prostitute engaged in her nefarious calling for nearly two years. This certificate was

offered to impeach the integrity and veracity of the said Francisca as a witness. Specific acts are not admissible for that purpose, and a witness's reputation for chastity or lewdness cannot be introduced to impeach her testimony. The reputation of a witness whose testimony is attacked for truth and veracity in the neighborhood in which she lives is the proper test on impeachment and not her reputation for anything else. Even a lewd woman may be a truthful one, and thus the fact attempted to be proven was altogether irrelevant and immaterial.

(j) The twelfth and thirteenth assignments of error, classed as being in regard to errors of law, really relate to questions of fact and object to the finding made by the trial judge that Balasquide had treated the mother of the plaintiff as his concubine, and had made remarks to the effect that he had no suspicion whatever as to her faithfulness, and expressed his joy that she had borne him a child; also that illicit relations existed between the father and mother of the plaintiff. These findings of the court were based upon some of the evidence introduced on the trial and apparent from the statement of the case, and we cannot regard them as erroneous, although contradictory testimony may also be found in the record.

(k) The fifteenth assignment of error merely alleges that the court below erred in finding that Martina Camacho is white. She is the mother of the child and represents him in the bringing of this suit. It is immaterial to a proper decision of this case to find her color. The goddess of justice is color-blind. We do not presume that it was the intention of the trial judge to find as a fact that Martina Camacho was of the pure Caucasian race, as it is immaterial whether she was or not. So this assignment may be dismissed from consideration without any further discussion.

(l) In the seventeenth and eighteenth assignments, as well as in the twelfth, the appellant complains of errors alleged to have been committed in regard to findings made establish-

ing the illicit relations set out in the pleadings, which are said to have begun a year or more previous to the birth of the child and while plaintiff's mother was living as a servant at the house of Ramón Balasquide, thereby fixing the date of the beginning of such relations on or before August 14, 1907. The evidence in regard to these dates and as to the relations existing between the parties alleged to have been the parents of the plaintiff is somewhat conflicting; and it has been often held by this court in accordance with the decisions of appellate courts in the United States that when the evidence is contradictory the conclusions reached by the trial court in regard thereto will be respected by the appellate court in the absence of partiality, passion or prejudice, or manifest error. Inasmuch as the trial judge hears and sees the witnesses and requires them to clear up any doubtful point presented in the evidence, and observes their attitude in giving their testimony, he is in a better position to reach a reasonable conclusion as to the veracity of the several witnesses and the correctness of any or all their testimony, being guided by a sound judgment and an honest conscience, than this court can be from a mere perusal of the record. *Río* v. *Vázquez,* 17 P. R. R., 644; *Márquez* v. *New York and Porto Rico S. S. Co.,* 17 P. R. R., 521; and *H. F. Besosa & Co.* v. *Cadierno, López & Co.,* 17 P. R. R., 127. There is nothing in this record on which an argument may be based claiming that the trial court was influenced in its findings of fact by any improper motive, or that any manifest error appears therein from the facts as presented here in the certified statement.

(*m*) It is objected in the nineteenth assignment to the findings made by the trial court, as set out therein, that the court found four several and distinct acts on the part of Ramón Balasquide, which are enumerated in the said assignment, tending to show his recognition of the plaintiff as his natural son. There certainly is some evidence in the statement of the case which would support these findings made by the trial court; and, in the absence of any valid objection

thereto showing therein incorrectness as heretofore outlined; we must accept them as correct.

(*n*) The twentieth assignment of error is virtually a continuation of the seventeenth, having, as it does, relation to the presence of Balasquide at the house of Martina Camacho at the time her son was born; and the same observations made in regard thereto may apply to this. We may further say that the essential point in dispute, according to the pleadings in this case, is whether or not Ramón Balasquide and Martina Camacho, prior to the birth of Enrique Camacho, sustained illicit relations with each other at a proper time to permit the conception, gestation and birth of the child. The trial judge in his findings holds that such relations existed for a year or more prior to the plaintiff's birth, and that it was during this period that the conception and gestation of the child took place. In order for the appellant to show that any error which the court may have fallen into with regard to these matters is essential, evidence must be found tending to show as a matter of fact that Ramón Balasquide and Martina Camacho did not sustain such intimate relations and intercourse with each other for a time sufficiently long and at a proper period to result in the conception, gestation and birth of the plaintiff, Enrique Camacho. In our opinion the appellant has failed to make such a showing from the record in this case. Then the finding attacked must be accepted as correct.

(*o*) The twenty-first assignment cites as error the finding made by the trial judge that Balasquide paid the fees of the midwife who attended plaintiff's mother at his birth, and other expenses incident thereto, and supported plaintiff as long as he, Ramón Balasquide, lived. There is certainly testimony in the record to sustain such a finding and it seems to us that these facts are established by the preponderance of evidence. Hence we cannot regard this assignment with favor.

(*p*) The twenty-second and fourteenth assignments com-

plain that the trial court merely found that the allegations contained in the complaint are true and that those set out in the answer are not true without showing any reason in support of said finding, thereby violating section 227 of the Code of Civil Procedure, as amended by the law passed in the year 1911. Let us examine these statutes. Section 227 of the Code of Civil Procedure, as amended by the Act of March 9, 1911, (Act No. 70), provides that on trials in the district courts the judge shall prepare and file a brief statement containing findings of fact and giving the reasons for his decision. Session Acts of 1911, p. 226. This the trial judge did in this case, as is shown by the record presented herein. An elaborate opinion by the trial court is not required. Simple findings of fact and conclusions of law, such as were made by the judge below in this case, are all that are absolutely necessary. Should the court below choose to file an extensive opinion, it may be useful to the appellate court, but whether it does so or not in the absence of statutory requirements is generally left to its discretion.

(*q*) In view of the fact that the trial judge has declared in his findings, based on the evidence introduced on the trial, not only that the plaintiff was born during the time that Martina Camacho and Ramón Balasquide maintained illicit relations with each other, but that Balasquide had both publicly and privately shown the child to be his and had spoken of it as his own child in conversation, and that he had provided for its maintenance and that of its mother while the mother was living in concubinage with him, the proof is ample of the acknowledgment of such child, and the code has been fully complied with in that respect; and the court was justified in basing its judgment upon the facts so found and the law as it exists.

(*r*) Regarding as we do that the judgment entered by the trial court in this case was founded on the evidence properly

admitted on the trial and on the law governing such cases in Porto Rico, the same should be in all things affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.